ATLANTA CONSOLIDATED STREET RAILWAY CO. *v.* OWINGS.

| 97 | 663 |
| 104 | 62 |

| 97 | 663 |
| 108 | 795 |

| 97 | 663 |
| 119 | 146 |

1. Where, in the prosecution of its business, a corporation employs a wire which, because of its being charged with a powerful and dangerous current of electricity, is liable, upon coming in contact with the wires of other corporations, to cause injury or death to employees of the latter while engaged in the performance of their duties, the corporation first referred to is, relatively to such employees, under the duty of observing at least ordinary diligence, not only in preventing such a contact, but also in discovering and preventing its continuance even when occasioned by the negligence of others, including that of a corporation whose employees are thus exposed to danger.
2. The declaration alleging that the defendant's "feed wire," it being a wire charged with a high potential current of electricity, was, at the time of the killing of the plaintiff's husband, "negligently and carelessly permitted by the defendant to rest upon and be in immediate contact with" a call wire of a com-

pany which was the master of the deceased, and the charge, as a whole, making it sufficiently clear to the jury that the plaintiff must prove the negligence thus alleged, and also that it occasioned the death of her husband, before she would be entitled to a recovery, the defendant's request to charge that she could recover only upon some act or acts of negligence alleged in the declaration was fairly covered.

3. If, while upon a pole a considerable distance above the ground, a person is so burned, shocked and put in pain by a current of electricity as to lose his strength, or consciousness, and the control of his movements, and in consequence falls to the ground and dies, it may be safely asserted that his death was caused by the electric current, whether, in case there had been no fall from the pole, death would have ensued or not.

4. Although the declaration alleged nothing as to any "prospect of increased earnings" on the part of the deceased, it was not under the facts of this case, improper for the judge, while instructing the jury as to the measure of damages, to state to them, in a general way, that they might consider such prospect, if any; he at the same time and in the same connection appropriately instructing them that they might also consider his "diminution of capacity to earn money as the result of growing years and infirmities of age."

5. There was no material error in rejecting evidence; the law as to contributory negligence was, in substance, fairly submitted by the judge to the jury, and even if the damages ought to have been apportioned on account of such negligence on the part of the deceased, the amount of the verdict was not so large as to show with complete certainty that this was not done; the verdict found was warranted; and, on the whole, there was no abuse of discretion in denying a new trial.

January 20, 1896.

Action for damages.    Before Judge Van Epps.    City court of Atlanta.    January term, 1895.

Mrs. Owings sued the railway company, alleging that on September 6, 1893, her husband, A. Y. Owings, was an employee of the Southern Bell Telephone and Telegraph Company, a corporation owning and operating a telephone system in and around Atlanta; and it became his duty as such employee to assist in relieving some trouble in a telephone in the house of the Piedmont Club.    In the performance of such duty it became necessary for him to ascend a pole

of the telephone company, situated within the grounds of the Piedmont Exposition Company at a point mentioned, for the purpose of testing the condition of the wire supported by said post, and thereby discovering the cause of said trouble. In testing these wires he had to cut and did cut the call wire which ran from said club-house to the office of the telephone company and which rested upon a glass insulator fastened in the top of a beam which was attached transversely to said pole. This wire was cut at a point one or two feet south from the pole, and in the cutting of it and in all the matters relating thereto he exercised the greatest care. Nevertheless, upon the severing of the wire he received from it a heavy charge of electricity, which burned the flesh from one of his arms between the wrist and elbow, and threw him from the pole and killed him. The charge of electricity which entered his body and ended his life was received by said wire from a "feed wire" of defendant, which issued from its power-house and was used to supply an electric current to one of its trolley-wires, the cars of defendant being operated by electricity. This feed wire was at the time negligently and carelessly permitted by defendant to rest upon and be in immediate contact with said call wire, which was stretched upon an insulator on a beam fastened across a post of said telephone company, which stands at the east end of the bridge over the track of the R. & D. R. R. Co., near said power-house, the point of contact between said wires being about fifteen feet south of said post. Owings was thirty-six years old, with robust health, and with an expectancy of thirty years and an earning capacity of $550 a year.

Plaintiff obtained a verdict for $4,500. Defendant moved for a new trial on numerous grounds, the main questions from which will appear from the opinion. The motion was overruled, and exception was taken.

*N. J. & T. A. Hammond*, for plaintiff in error.
*Marshall J. Clarke*, contra.

LUMPKIN, Justice.

1. This case, in some respects, resembles that of *Augusta Railway Co.* v. *Andrews*, 89 *Ga.* 653, although in one essential feature the two cases are materially different.    In the former, it appeared that Andrews, who was injured by an electric current, was, at the time he received the shock, a trespasser upon the fire-alarm system of the city of Augusta, having, without permission, climbed a pole upon which he had no right to go; and it was accordingly held that he took the risk incident to the trespass.   In the present case, the deceased husband of the plaintiff, who was killed by a current of electricity emanating from the plant of the defendant railway company, was not a trespasser, but was engaged in the performance of his duties as a lineman of the telephone company, and was in the strictest sense where he had a perfect right to be at the time he received the fatal shock.

The railway company employed, in the conduct of its business, a subtle, dangerous and death-dealing agency.    It consisted of a high potential electric current which traversed wires stretched upon poles and running through the city of Atlanta and its suburbs.    These wires were liable, upon coming in contact with other wires belonging to the telephone company, the electric light company, and perhaps other corporations, to cause injury or death to employees of these other companies while engaged in performing their duties as linemen.    Under these circumstances, it is to all minds a clear proposition that the railway company was bound to exercise at least ordinary diligence, not only to prevent contacts from which the above mentioned consequences might reasonably be expected to ensue, but also to discover and take measures to prevent a continuance of such contacts even when occasioned by the negligence of any other persons.    To hold otherwise would be to allow this company to maintain its deadly agency with no responsibility whatever for consequences which, in the natural

course of things, might in all probability occur. Those who employ in the prosecution of their business a palpably and highly dangerous agency, such as electricity, are bound to exercise such precautions to prevent injury to others as the emergency would reasonably seem to require. In this connection, we refer to the interesting case of Ahern v. Oregon Telephone &c. Co., 22 L. R. A. 635. It cannot be doubted that the owner of a ferocious lion would be bound to keep him securely caged in order to prevent harm to others; and even if a negligent or malicious person should open the door of the lion's cage and allow him to escape, there should be no unreasonable delay on the part of the owner in discovering this fact and in taking diligent steps looking to the recapture of the animal. The feed wire of the railway company, from the very subtlety and intangible form of the danger that lurks therein when it is charged with a powerful current of electricity, is much more dangerous than a score of lions. Its death-dealing power is not discoverable by exercising the senses of sight, hearing or smell. Imperceptibly and noiselessly it strikes down its victim, and he is either mutilated or killed before he has the slightest warning of the terrible danger so near at hand.

The duty of preventing, if possible, a contact between this dangerous feed wire and the wires belonging to other companies can hardly be denied. The duty of providing against its continuance, when occasioned solely by the act of others, is, of course, less stringent; but nevertheless, where such a contact exists, the company ought to discover it within a reasonable time and take prompt and efficient measures to correct and remedy the evil. Exactly what period will constitute a reasonable time cannot be accurately defined. Each case must depend almost entirely upon its own peculiar facts and attending circumstances; and whether or not the proper degree of diligence has been observed will, in every instance, be a question for determination by the jury.

2. It is no longer a debatable question that, in order to recover for injuries occasioned by the negligence of the defendant, the plaintiff can recover only upon some act, or acts, of negligence alleged in his declaration. In the present case, counsel for the defendant requested that an instruction to this effect be given to the jury. The court declined to charge in the precise language of the request, but we think its substance was fully covered by the charge actually given. Among other things, the declaration alleged that the defendant's feed wire was "negligently and carelessly permitted by the defendant to rest upon and be in immediate contact with" a call wire of the telephone company. The charge, as a whole, made it sufficiently clear to the jury that the plaintiff must prove the negligence thus alleged, and also that it occasioned the death of her husband, before she would be entitled to a recovery.

3. It was argued that the deceased was not actually killed by the electric shock; that while he was stunned and injured by it, his death was really occasioned by his fall to the ground from the top of the pole upon which he was at work. There is no merit at all in this contention. It was proved beyond question that the deceased was so burned, shocked and put in pain, as to lose his strength or consciousness and the control of his movements, and in consequence fell to the ground and was killed. Certainly, under such circumstances, it could not be inaccurate to say that the electric current was the proximate cause of his death.

4. In charging the jury with reference to the measure of damages, the presiding judge stated that they might take into consideration any "prospect of increased earnings" on the part of the deceased. This charge was complained of as erroneous, on the ground that it alluded to a matter as to which nothing was alleged in the declaration. In the same connection, however, the judge also instructed the jury that they might consider the deceased's "diminu-

tion of capacity to earn money, as the result of growing years and infirmities of age." Taking the charge altogether, it was not unfair to the defendant. The court was simply holding up both sides of the question with reference to the earning capacity of the deceased in the event he had not been killed. No point was raised that there was no evidence as to a probable increase of earning capacity on the part of the deceased upon which to predicate the charge complained of. Assuming that it was necessary for the plaintiff to make specific allegations in her declaration as to this element of damage she had suffered, in order to enable her, as matter of right, to introduce evidence in support thereof, it seems clear that the proper course to be pursued by the defendant would have been to object to the introduction of such of the evidence as was not covered by the allegations of the plaintiff's declaration. If evidence as to the probable increased earning capacity of the deceased was, without objection, allowed to go to the jury, it certainly would seem proper for the judge, if not incumbent upon him, to instruct the jury what they were to do with such evidence. *Central Railroad Co.* v. *Attaway,* 90 *Ga.* 659, and authorities there cited.

5. Error was assigned upon certain rulings of the judge in rejecting evidence; but after carefully and thoroughly examining the record, we do not discover that any material error in this respect was committed.

It was strenuously insisted that the evidence showed that the deceased was guilty of such contributory negligence as to require an apportionment of the damages, and that the verdict ought to be set aside for the reason that the jury evidently deducted nothing on this account. The record before us does not, however, sustain this contention. The amount of the verdict is not so large as to show with certainty that no apportionment was in fact made; for, under the evidence, the verdict might have been for even a larger amount than that found by the jury. This being so, and

the law as to contributory negligence having been fully and fairly submitted to the jury, we do not feel authorized to disturb their verdict on the ground that it is excessive.

Unquestionably, there was evidence upon which a finding for the defendant could have been safely predicated; but the jury, as was their right, accepted that version of the evidence as a whole which operated favorably to the plaintiff. In this view, the verdict found was fully warranted. We have no right to interfere with the functions which the law devolves upon juries; and upon a full review of the whole case, we find no legal reason for directing that the case undergo another investigation.

*Judgment affirmed.*