## WESTERN UNION TELEGRAPH CO. *v.* GRIFFITH.

1. The denial by a court of this State of a petition to remove a case there-from to a Federal court is, under section 5526 of the Civil Code, review-able by this court; for if the decision upon such petition had been as claimed by the petitioner, it would, so far as the State court was concerned, have been a final disposition of the case.
2. A joint action of tort brought by a citizen of this State in a court thereof against two corporations, one domestic and the other foreign, is not, at the instance of the latter, removable to a circuit court of the United States, either on the ground of "diverse citizenship," or the ground that the controversy between the plaintiff and the defendant seeking to re-move is one which is "separable, and can be fully determined as between them without the presence of the other defendant"; and this is true though, under the plaintiff's allegations, the defendants may be severally as well as jointly liable.

Argued January 21, — Decided April 11, 1898.

Petition to remove cause. Before Judge Eve. City court of Richmond county. March term, 1897.

*J. S. & W. T. Davidson*, for plaintiff in error.
*Joseph R. Lamar* and *C. Henry Cohen*, contra.

LUMPKIN, P. J.    1. The first question now presented for de-termination is, whether or not a writ of error will lie to this court for the purpose of reviewing the denial by a trial court of this State of a petition to remove a case therefrom to a circuit court of the United States.  There appears to be a conflict of opinion as to whether "an order of a State court granting or denying a petition for removal [can] be reviewed by the ap-pellate court of the State." 20 Am. & Eng. Enc. L. 1012 (note 2), citing numerous cases pro and con.  "The State courts have generally held that an appeal lies to the appellate court of the State from an order for the removal of a cause to a Fed-eral court, or from an order refusing such removal." Dillon's Removal of Causes (5th ed.), 174 (note), reviewing the de-cisions of State courts dealing with this question.  In Black's Dillon on Removal of Causes, § 191, the subject is discussed fully and learnedly, the author stating as his conclusion, after an examination of all the authorities, that it is the right and duty of a State court to determine, from a careful inspection and consideration of the record, whether as matter of law the

cause is removable, before yielding its jurisdiction. In the Removal Cases, 100 U. S. 474, the Supreme Court of the United States said: "We fully recognize the principle heretofore asserted in many cases, that the State court is not required to let go its jurisdiction until a case is made which, upon its face, shows that the petitioner can remove the cause as a matter of right." This statement was reiterated in Stone *v.* South Carolina, 117 U. S. 430, it being further said, if the State court "decides against the removal and proceeds with the cause, its ruling is reviewable here after final judgment."

At all events, this court has always asserted its jurisdiction to review the decision of a trial court of this State in passing upon a petition for removal. In *Carswell* v. *Schley,* 59 *Ga.* 17, Justice Bleckley dispelled all doubts as to the attitude which our judiciary had determined to assume upon the then mooted question. It was there held: "Before surrendering, upon a petition for removal into the Federal court, its jurisdiction over a pending case, the State court must have before it a petition which, taken in connection with the record, sets out all the facts necessary to show a right of removal on the part of the petitioner. Final decision by the superior court upon the sufficiency of the petition is subject to review by the Supreme Court." This decision has ever since been followed: *Jackson* v. *Mutual Life Ins. Co.,* 60 *Ga.* 423; *Stafford* v. *Hightower,* 68 *Ga.* 394; *Angier* v. *East Tenn., Va. & Ga. R. R.,* 74 *Ga.* 634; *Steiner* v. *Mathewson & Co.,* 77 *Ga.* 657. In each of the cases last above cited, exception was taken to the granting of the petition for removal; and this court in each instance entertained and passed upon a writ of error sued out by the plaintiff in the court below. This action was based upon the idea that, so far as the State court was concerned, the order of removal was a final disposition of the case. In the present case, counsel for the defendant in error contended that, conceding the right of this court to ultimately review the decision of the court below of which complaint is made, "the order *refusing* the petition to remove was not a final judgment, and the writ of error was prematurely brought." We can not accede to this proposition. Section 5526 of the Civil Code expressly pro-

vides that a writ of error will lie to this court whenever "the decision or judgment complained of, if it had been rendered as claimed by the plaintiff in error, would have been a final disposition of the cause." Certainly if, as the present plaintiff in error here contends, an order *granting* its petition should have been passed, a final disposition of the case in the court below would have resulted had a judgment in accordance with this claim been rendered. The very purpose of the section above cited is to preserve the right of a party to resist being forced into a trial on the merits which can accomplish nothing and must needs prove entirely fruitless. The case of *Cumberland Gap Building & Loan Association* v. *Wells & Ellerbee*, 99 *Ga.* 228, is directly in point, and affords a precedent for the ruling now made. There, this court took cognizance of a writ of error complaining of the *refusal* by the trial court to grant a petition for removal, passed upon the merits thereof, and reversed the judgment rendered below.

2. A removal of the present case was sought by the Western Union Telegraph Company, which was sued jointly with the Augusta Railway & Electric Company for an alleged tort committed upon the person of the plaintiff, Louisa B. Griffith. As originally filed, the petition for removal was based solely on the ground that the Telegraph Company "was a citizen of the State of New York, and not a citizen or resident of Georgia, and that the plaintiff was, and still is, a citizen and resident of the State of Georgia." By amendment, the movant sought to introduce the additional ground that the controversy between it and the plaintiff was separable, and could "be fully determined, as between them, without the presence of the other defendant." This amendment was disallowed, and the trial judge held that the ground stated in the original petition for removal was without merit. In the view we take of the case, it is unnecessary to determine whether it was, or was not, the privilege of the movant to so amend its petition as to incorporate therein its contention that the controversy was separable; for, giving to the movant the benefit of both grounds urged in support of its petition, we are satisfied that no right to a removal of the case was shown. The Augusta Railway & Electric Com-

pany was alleged by the plaintiff to be "a corporation under the laws of the State of Georgia, of said [Richmond] county," wherein suit was brought. This sufficiently set forth its citizenship. "A private corporation is deemed a citizen of the State from which it derives its charter or under whose laws it is organized and exists." Black's Dillon on Removal of Causes, § 97. This allegation of fact was not controverted by the movant in its petition to remove. There seems, indeed, to have been no controversy in that regard; and the plaintiff in error, in its bill of exceptions, recites that its codefendant is "a corporation of Richmond county," in the city court of which county the action was brought. Accordingly, the suit is to be treated as one brought by a citizen of this State against two named corporations, one domestic and the other foreign, alleged to be liable to the plaintiff as joint tort-feasors. As to the movant's contention that it was entitled to remove the case on the ground of diverse citizenship between itself and the plaintiff, it is pertinent to remark that the language employed by the removal act of 1887, viz., that suits "in which there shall be a controversy between citizens of different States" may be removed, etc., is identical with that used in the act of 1875. Dillon on Removal of Causes (5th ed.), § 102. Construing the act last cited with regard to the provision above quoted, the Supreme Court of the United States declared that: "To entitle a party to a removal under this clause, there must exist in the suit a separate and distinct cause of action, in respect to which all the necessary parties on one side are citizens of different States from those on the other." Ibid., citing Hyde v. Ruble, 104 U. S. 407. Accordingly: "If any one of the plaintiffs is a citizen of the same State with any one of the defendants, the case will not be removable." Black's Dillon on Removal of Causes, § 84, citing numerous cases, including the more recent decisions of the Federal courts construing the act of 1887. To the same effect, see also 1 Foster's Fed. Prac. (2d ed.) § 18; 20 Am. & Eng. Enc. L. 980–981. Involving, as they do, the construction of a Federal statute, the decisions of the Supreme Court of the United States upon this question are to be regarded as authoritative.

It is further to be observed that: "The removal acts of 1875 and 1887 contain substantially the same provisions for the removal of any suit in which there is a controversy which is wholly between citizens of different States and which can be fully determined as between them, except that under the former act 'either one or more of the plaintiffs or defendants actually interested in such controversy' might remove the suit, while under the latter the right is restricted to 'one or more of the defendants actually interested in such controversy.' Therefore, decisions under the former statute as to what constitutes a separable controversy apply equally well to cases arising under the latter." 20 Am. & Eng. Enc. L. 995–996. And to the same effect, see Black's Dillon on Removal of Causes, § 139. "For the purpose of determining whether a controversy is separable, the allegations in the bill must be taken as true." Wilder *v.* Virginia &c. Company, 46 Fed. Rep. 682. Thus regarding the recitals of fact contained in the petition filed by Mrs. Griffith in the present case, it can not be doubted that she properly sued the defendants jointly in one and the same action. "The nature of the controversy must be determined from the declaration or bill of complaint; and where a joint action is brought against several defendants, the fact that they file separate and different answers does not raise a separable controversy as to any of them, even though the plaintiff might have sued each of them separately, and even though in the joint action the plaintiff may have judgment against such of the defendants as may be found to be liable." 20 Am. & Eng. Enc. L. 996, citing decisions by the Federal Supreme Court. "A controversy is not separable when a defendant, who would otherwise be entitled to remove the suit, is charged as jointly liable with another defendant, who is a fellow-citizen of the plaintiff. Such a case can not be removed by a defendant whose citizenship is different from that of the plaintiff, even if the alleged cause of action is both joint and several, whether in tort or contract, if the plaintiff has sued the defendants jointly; although a State statute permits judgment to be entered for or against one or more of the plaintiffs, and for or against one or more of the defendants. A separate controversy is not presented 'be-

cause complainants might have severally prosecuted a suit which they have jointly brought, nor can a defendant say that an action shall be [several] which a plaintiff elects to make joint.'" 2 Foster's Fed. Prac. (2d ed.) § 384. See also Dillon on Removal of Causes (5th ed.), § 43.

"Where the plaintiff's cause of action is joint and several, he has the option whether to sue the defendants individually or to join them in one action; if he elects to pursue the latter course, his choice determines the character of the suit, and no one of the defendants can treat the suit, as it concerns him, as severable for the purpose of a removal to the Federal court." Black's Dillon on Removal of Causes, § 145. "When several persons participate in the commission of a tort, the cause of action accruing to the injured party is joint and several, in the sense that he will have his option whether to proceed against one or more of the tort-feasors separately or to join them all as defendants in one suit. But if he elects to treat the liability of the defendants as joint, and proceeds against all of them in one action, it will be regarded as involving but one single controversy, between the plaintiff on the one side and all the defendants on the other side, and no one of the defendants can remove the cause to a Federal court on the averment that it contains a separable controversy between the plaintiff and himself alone." Ibid. § 146. In other words, the "cause of action alleged in the plaintiff's pleading must be accepted as the only criterion," in determining whether or not the controversy is really severable. Ibid. § 141.

What is said immediately above is in entire accord with the view expressed by the Supreme Court of the United States in Torrence v. Shedd, 144 U. S. 530–531, decided in 1891. In delivering the opinion in that case, Mr. Justice Gray remarked: "As this court has repeatedly affirmed, not only in cases of joint contracts, but in actions for torts, which might have been brought against all or against any one of the defendants, 'Separate answers by the several defendants sued on joint causes of action may present different questions for determination, but they do not necessarily divide the suit into separate controversies. A defendant has no right to say that an action shall be several

which a plaintiff elects to make joint. A separate defense may defeat a joint recovery, but it can not deprive a plaintiff of his right to prosecute his own suit to final determination in his own way. The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings,'" citing a number of previous decisions. The gist of the present action was, according to the plaintiff's allegations, the joint negligence of the defendants in maintaining, rather than in producing, a dangerous agency which was a constant menace to the life and safety of the general public, caused by a contact between their wires, which, though charged with a deadly current of electricity, were allowed to remain on the ground in a public thoroughfare for thirteen days, although both defendants had notice of this state of affairs and made no attempt to repair the mischief. That both of them were equally culpable in thus maintaining this dangerous agency is not to be doubted, if these allegations are to be taken as true; and this being so, it would not matter, so far as their joint liability to her was concerned, which of them was responsible for allowing their wires to come in contact. Indeed, even were they entirely blameless in this regard, it was the imperative duty of each to promptly take the proper steps to replace its wires in a condition of safety so soon as notice was had of the danger thus created. In this connection, see *Atlanta Consolidated Street Railway Co.* v. *Owings,* 97 *Ga.* 663.

*Judgment affirmed. All concurring, except Cobb, J., absent.*