## Wytheville.

RICHMOND & PETERSBURG ELECTRIC RAILWAY COMPANY v.
RUBIN.

JUNE 16, 1904.

1. ELECTRIC POWER COMPANIES—*Dangerous Agencies—Degree of Care.*—
The exercise of reasonable care requires persons using dangerous
agencies, such as electricity, to avail themselves of the best me-
chanical contrivances and inventions in practical use which are
effectual in preventing injury to persons and property. What con-
stitutes usual and ordinary care is graduated and determined by
the danger involved, and must be commensurate therewith. The
frequency of accidents resulting from the contact, by breaking
or sagging, of high tension wires with those of low tension, and
the danger to persons and property caused thereby is very great,
and where a company using electricity negligently fails to maintain
guard-wires, insulation and other devices usually employed to pre-
vent such danger, it becomes liable for any injury resulting from
such negligence. It is the province of the jury to determine
whether or not due care was exercised.

2. TROLLEY AND TELEPHONE WIRES—*Crossed Wires—Negligence—Lia-
bility.*—Where the trolley wires of an electric railway company
intersect with the wires of a telephone company, it is immaterial
which company had the prior or superior right in erecting its
wires. It is the duty of both to exercise due care to prevent the
wires coming in contact; and if the railway company fails to exer-
cise due care in that respect, and in consequence thereof a house
is destroyed by fire caused by the transmission of an unusual and
dangerous flow of electricity from its trolley wires through the
telephone wires leading into such house, the company is liable
to the owner of the house for the damage occasioned thereby.

3. EVIDENCE—*Usage and Custom—Negligence—Ordinary Care.*—Evi-
dence of witnesses, more or less experienced in the construction
and maintenance of electric lines that they had never known guard-

wires to be permanently used to prevent telephone wires from coming into contact with trolley wires, does not establish the fact that such was the general usage and custom of ordinarily prudent persons operating electric lines.

4. INSTRUCTIONS—*Presumptions.*—It is proper to refuse an instruction as to artificial presumptions of facts where the matter is covered by the evidence before the jury.

5. ACTS OF GOD—*Storm*—*Province of Jury.*—Whether a storm was so extraordinary in its character as to amount to "An act of God" is a question to be submitted to the jury.

6. TELEPHONE WIRES—*Crossed Wires—Contributory Negligence.*—The failure of a telephone subscriber to provide devices to guard against the contingency of such an unusual and dangerous flow of electricity into his house through the telephone wires as would result from the heavily charged trolley wires of an electric railway company coming into contact with the wires of the telephone company is not contributory negligence. It is not contributory negligence to fail to anticipate culpable negligence on the part of another.

7. EXAMINATION OF WITNESSES—*Leading Questions.*—When and under what circumstances a leading question may be put to a witness is in the discretion of the trial court, and, as a general rule, is a matter which cannot be assigned as error.

8. EVIDENCE—*Admissibility.*—A party is entitled to have the fact shown in evidence that the witness under examination was summoned by the other party to the cause, as tending to show that the latter thought the witness worthy of credit.

9. EVIDENCE—*Bill of Exception.*—A judgment will not be reversed because evidence has been excluded or rejected by the trial court, unless its materiality be made to appear. The bill of exception must show what the answer of the witness would have been had he been permitted to answer.

Error to a judgment of the Circuit Court of Chesterfield county, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*William L. Royall,* for the plaintiff in error.

*P. V. Cogbill, D. L. Pulliam* and *W. C. Pulliam,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Harry J. Rubin instituted his action of trespass on the case to recover damages for the burning of his stock of goods, alleged to have been caused by the negligence of the Richmond and Petersburg Electric Railway Company. Upon the trial of the cause, there was a verdict and judgment for the plaintiff, and to that judgment the Railway Company obtained this writ of error.

The first error assigned is the action of the trial court in refusing to give the defendant company's instruction, numbered 4, which is as follows:

"If the jury believe from the evidence that the fire which consumed plaintiff's store was not caused by defendant's agents moving the poles of the Long Distance Telephone Company of Virginia or otherwise weakening the wires of the said Long Distance Telephone Company so that one or more of them broke and fell upon the wires of the defendant, and took up and carried from them electricity to plaintiff's store, thereby setting fire to it; and if they further believe from the evidence that when defendant, in constructing its railway line reached the turnpike where its wires had to intersect with the wires of the Long Distance Telephone Company of Virginia, it found the line of the said Telephone Company properly constructed, and with wires as good and as strong as are usually used in the construction of long distance telephone lines in the country, and if they further believe from the evidence that defendant, in running its wires under the wires of said Long Distance Telephone Company, placed them far enough from those wires to avoid risk of contact

between them by reason of said telephone wires sagging from natural causes, then they are instructed that defendant was under no obligation to erect guard wires or other safeguards between its wires and the wires of said Telephone Company. And if they further believe from the evidence that the wires of said Long Distance Telephone Company of Virginia were broken by a sleet caused by a storm so violent and extraordinary that the history of climatic variations and other conditions in this region afforded no reasonable warning of it, and that being thus broken they fell on the defendant's wires and took up from them electricity which they carried to plaintiff's store, and thereby set it on fire, then they are instructed that defendant is not liable for its electricity being so carried to plaintiff's store, and their verdict should be for defendant, unless the wire broke at a place where defendant's agents cut and mended the same."

By this instruction the court was asked to tell the jury, among other things, that, as a matter of law, the defendant company, in running its wires under the telephone wires, was under no obligations to erect guard wires, or other safeguards, between its wires and the telephone wires, provided the distance between them was sufficient to avoid contact between them by reason of the sagging of the telephone wires, if they believed the telephone line was properly constructed, and its wires as good and as strong as are generally used in the construction of long distance telephone lines in the country. It is true, as insisted by counsel for the defendant company, that in the construction and maintenance of its wires under the telephone wires, it was only required to exercise reasonable or ordinary care. But what is reasonable or ordinary care is to be graduated and determined by the danger under all the circumstances of the case. The danger to persons and property from permitting a telephone wire to come into contact with a trolley wire, heavily charged with elec-

tricity, is very great, and the care required to avoid such contact must be commensurate with the danger.    1 *Thompson on Neg.* (2nd Ed.), secs. 797, 804; *Joyce on Electricity,* sec. 445.

The fact that the defendant company had legislative authority to operate an electric railway did not lessen its duty to exercise a degree of care proportionate to the danger to be avoided.

A steam railway company has legislative authority to employ the powerful and dangerous agency of steam; but that does not make it any the less incumbent upon such company to avail itself of the best mechanical contrivances and inventions in known practical use, which are effectual in preventing the burning of private property by the escape of sparks and coals from its engines, and it is liable for injuries caused by its omissions to use them.    *Brighthope Ry. Co.* v. *Rogers,* 76 Va., 443, 450. The agency by which an electric railway operates its cars is certainly as dangerous as steam, and at least as high a degree of care should be required of such a company as is imposed upon a steam railroad company.

Many accidents occur which are caused by the current of high tension wires being transmitted through low tension wires, when such wires come into contact by sagging or breaking.    "The number of such accidents," says Thompson on Negligence, Vol. 1, sec. 804, "raises the obvious conclusion that the exercise of reasonable care, which is graduated to the danger, demands in this relation a very high and exact measure of foresight, skill, diligence and inspection."    *Joyce on Electricity,* sec. 445.    To guard against such danger guard-wires, insulation, and other devices are frequently employed, and where a company negligently fails to maintain such devices between its trolley wires and telephone wires, and injuries result from telephone wires coming in contact with its trolley wires, it becomes responsible for such injuries, its negligence being the proximate cause of the accident.    1 *Thompson on Neg.,* secs. 805, 806, 807; *Joyce on Electricity,* secs. 517a 445; 1 *Shear & Red. on Neg.,* sec. 698.

The defendant introduced witnesses more or less experienced in the construction and maintenance of electric lines, who testified that they had never known guard-wires to be permanently used to prevent telephone wires from coming into contact with trolley wires. Their evidence did not establish the fact that such was the general usage or custom of ordinarily prudent persons engaged in the business of operating electric lines. If it had, it would not have brought the case within the doctrine laid down in *Bertha Zinc Co.* v. *Martin,* 93 Va. 791, 22 S. E. 869, as the counsel for plaintiff in error contends.

In this case the defendant was using a highly dangerous motive power, and, as we have seen, as in the use of steam power, it was its duty to avail itself of the best mechanical contrivances and inventions in practical use which are effectual in preventing injury to private property from its wires coming into contact with the telephone wires. Such a high degree of care is not incumbent upon the master towards his servant. "The master," says Shearman & Redfield (1 Shear. & Red. on Neg., sec. 195), and this is well settled law, "is not required to use more than ordinary care and diligence (as already defined) for the protection of his servants, under circumstances which would entitle a passenger or stranger to the use of great or extreme care. . . . . The master is not bound to provide the very best materials, implements, or accommodations which can be procured, nor those which are absolutely the most convenient and most safe. His duty is discharged by providing those which are reasonably safe and fit." *Bertha Zinc Co.* v. *Martin, supra; N. & W. Ry. Co.* v. *Cromer,* 99 Va. 763, 40 S. E. 54. See also *Thompson on Neg.,* secs. 30 to 32.

Whether or not the defendant had exercised the proper degree of care in guarding its wires from coming into contact with the telephone wires, was a question for the jury, to be determined by all the facts and circumstances of the case, under the instructions of the court. The question of negligence, or due care, is

one peculiarly within the province of the jury, and cannot be established as a matter of law by a state of facts about which reasonably fair-minded men may differ. *Carrington* v. *Ficklin,* 32 Gratt. 670; *Kimball & Fink* v. *Friend,* 95 Va. 140, &c., 27 S. E. 901.

The question of whether or not the breaking of the telephone wire and its contact with the trolley wire were caused by a storm so extraordinary in its character as to amount to an "act of God," upon which the court was asked to instruct in the latter part of instruction No. 4, was properly submitted to the jury by other instructions given by the court.

The second assignment of error is the giving of instruction "AA" by the court, on its own motion. The objection made to it is that it left to the jury to say whether or not, under all the facts and circumstances of the case, the defendant had exercised due care in guarding its wires from contact with the wires of the telephone company. That was a question for the jury, as we have seen in considering the defendant's instruction No. 4, and as instruction "AA" properly submitted that question to them, there was no error in giving it.

The third error assigned is the refusal of the court to give the defendant's instruction No. 10. By that instruction the court was asked to tell the jury that if the right of the defendant to erect its wires at the point where they intersected with the telephone line was prior to that of the telephone company, it was under no obligation to put up a guard-wire between its wires and the telephone wires, and that if they further believed that the telephone wires fell upon the wires of the defendant and took from them electricity which was carried to and destroyed the plaintiff's store, the defendant was not responsible for the fire and loss thus caused, unless the telephone wires broke where the defendant's agents cut and mended the same.

This instruction was properly rejected. It was wholly immaterial to the plaintiff's right of recovery whether the defend-

ant company or the telephone company had the prior or supe-
rior right in erecting their respective wires.   It was the duty
of both to exercise due care to see that their wires did not come
in contact, and if the defendant failed to do this, it was liable
for the consequences of its negligence.   1 Thompson on Neg.,
sec. 805 ; Joyce on Electricity, sec. 517.

The refusal of the court to give the defendant's instructions,
numbered 5, 6, 7, 8 and 9 is assigned as error.   Instructions 5,
6 and 7 define the measure of the defendant's duty in guarding
against its wires and those of the telephone company coming into
contact, and are in conflict with what we have seen, in discuss-
ing the defendant's instruction No. 4, is the correct rule on the
subject, and were, therefore, properly refused.

By instruction No. 8 the court was asked to tell the jury that
the law presumed that the telephone company, in erecting its
line, used all the ordinary precautions for making its wires
safe, so that they would not cause injury to its clients and cus-
tomers.   The manner in which the telephone line had been con-
structed was before the jury, and artificial presumptions do
not generally come into play where the evidence shows the con-
ditions under which an accident occurs.   1 Thompson on Neg.,
sec. 482.   The instruction was properly refused.

By instruction No. 9 the court was asked to instruct the jury
that if they believed from the evidence that at the time of the
accident there was in common use a device to be attached to
telephone wires entering houses, which was an effectual guard
against the admission of an unusual and dangerous flow of elec-
tricity, and that the plaintiff had failed to use such device, then
the plaintiff was guilty of contributory negligence and could not
recover.

"As there is a natural presumption that every one will act
with due care (in the absence of evidence to the contrary)," say
Shearman & Redfield in their work on Negligence, sec. 92, "it
cannot be imputed to the plaintiff as negligence that he did not

anticipate culpable negligence on the part of the defendant or a stranger.    He has the right to assume that every one else will obey the law (including not only the common law, but also statutes or city ordinances) and to act upon that belief."    Ordinarily prudent men would scarcely think it necessary, when they have telephones placed in their houses to use devices to prevent their property from being destroyed by an unusual and dangerous flow of electricity, transmitted to the telephone wire by the negligence of an electric railway company in allowing its heavily charged wires to come into contact with the telephone wire. Clearly the failure of the plaintiff to guard against such a contingency was not contributory negligence as a matter of law, as the plaintiff's instruction made it.

The next assignment of error is to the action of the court in giving its own instruction "BB" and the instructions A, B, C, D and E, asked for by the plaintiff.    The objection made to each and all of these instructions is that they made the jury the judges of whether or not the defendant exercised reasonable care in guarding against contact between its wires and those of the telephone company.    This was manifestly a question for the jury, for the reasons given in discussing the defendant's instruction No. 4.

In stating his case to the jury, plaintiff's counsel made certain statements as to what he expected to prove, which were objected to by the defendant on the ground that there were no averments in the declaration which authorized such proof.    The action of the court in permitting such statement to be made is assigned as error.

There is no merit in this objection, as the averments in the declaration clearly entitled the plaintiff to put in evidence the facts which his counsel stated he expected to prove.

Another assignment of error is to the action of the court in allowing the following question to be asked, upon the ground that it was leading, viz.:    "As an expert, state whether or not

if a telephone wire which was a copper one had been spliced with an iron wire, would it not have been a defective way to have done it?" When and under what circumstances a leading question may be put is in the discretion of the trial court, and as a general rule is a matter which cannot be assigned as error. 1 Greenleaf on Ev. (Redfield's Ed.), sec. 435. But if it could be, no injury resulted to the defendant in allowing the question to be asked, since the witness had already testified that an iron wire and a copper one would not splice well.

During the examination of a witness, who was put upon the stand by the plaintiff, he was asked if he was not summoned by the defendant. He answered that he did not know. The clerk of the court was then called upon to see if the witness was not so summoned, whereupon the counsel for the defendant admitted that he was, but afterwards moved the court to strike out the admission. The court overruled the motion, and this is assigned as error.

The plaintiff was entitled to have the fact admitted in evidence as tending to show that the defendant thought the witness was worthy of credence by having him summoned, and the court properly refused to strike out the admission.

Another error assigned is the refusal of the court to allow the witness Tucker to answer a question propounded to him as an expert. The witness was asked on one day of the trial, whether or not a certain kind of fuse was in common use, and answered that he did not know. On the next day he was put upon the stand and asked if he had made inquiries about its use, and whether or not he could make any statement in addition to that made on the day before as to the fuse being in general use in February, 1902. This question was objected to, and the court refused to allow it to be answered, upon the ground that the witness' expert knowledge on the subject was not of such a character as to fit him to answer the question.

The court's ruling was plainly right; but, if it were not, the exception could not be considered, since the bill of exception does

not show what the answer of the witness would have been if he had been permitted to answer. He may have known no more on the subject on that day than he did the day before. A judgment will not be reversed because evidence has been excluded or rejected by the trial court, unless its materiality be made to appear. *Union Central Life Ins. Co.* v. *Pollard,* 94 Va. 146, 157, 26 S. E. 421, 36 L. R. A. 271, 64 Am. St. 715; *Kimball & Fink* v. *Carter,* 95 Va. 77, 80, 27 S. E. 823, 38 L. R. A. 570.

The refusal of the court to strike out certain answers of Nunnally and Martin, witnesses for the plaintiff, because the answers were immaterial, is assigned as error. It is unnecessary to decide whether or not the court erred in not excluding the evidence in question, as it is clear that it could not have affected the verdict of the jury.

The remaining assignment of error is the refusal of the court to set aside the verdict because not warranted by the evidence. There were two theories as to the cause of the fire which destroyed the plaintiff's goods—one, that of the defendant, was that the storehouse caught on fire from the stove which was in it, and there was some evidence tending to sustain that contention, but the great weight of evidence tended to show that there had been no fire in the store for some hours prior to the accident, and that the building did not catch on fire from that source. The other theory was that the storehouse was set on fire by the telephone wire, when it fell upon or came in contact with the defendant's wires. The evidence, which covers more than two hundred pages in the printed record, sustained that theory, and fully justified the jury in reaching the conclusion they did.

Upon the whole case we are of opinion that there is no error in the record to the prejudice of the plaintiff in error, and that the judgment of the Circuit Court should be affirmed.

*Affirmed.*