[S. F. No. 4854.   In Bank.—January 4, 1910.]

GEORGE W. DOW, Respondent, v. SUNSET TELEPHONE
AND TELEGRAPH COMPANY (a Corporation), De-
fendant, and OAKLAND GAS, LIGHT AND HEAT
COMPANY (a Corporation), Defendant and Appellant.

Negligence—Wires of Electric-Lighting and Telephone Company—
Defective Insulation—Placing in Dangerous Proximity—Plead-
ing.—In an action brought against a telephone company and an
electric-lighting company to recover for personal injuries inflicted
on an employee of the telephone company from an electric shock
resulting from a contact of the wires owned by the respective com-
panies, the negligence of both companies in allowing their wires to
remain in too close proximity may be considered under a complaint
which alleges the defective insulation of the wires, and which further
charges that the telephone wires came in contact with the electric-
light wires by reason of natural sagging "and in consequence of
having been suspended too closely above said electric-light wire."

Id.—Evidence of Defective Insulation—Contact of Wires.—In such
action evidence tending to show that the wires of the two companies
were placed in dangerous proximity and occasionally came in contact,
and that a "jumping arc" of light was produced between them, which
fact was known to the electric-lighting company, was sufficient to
warrant the presentation to the jury of the question of that com-
pany's negligence by reason of defective insulation.

Id.—Joint Negligence of Companies — Continued Maintenance of
Wires in Dangerous Proximity Is Negligence.—The charge con-
tained in such complaint that the wires of the two companies were in
too close proximity embraced an allegation of negligence of both
companies.  If the wire of the telephone company was the last placed,
that company became in the first instance directly responsible for the
negligent work.  If the electric-lighting company had knowledge that
the wire was dangerously close, and liable to sag, the continued main-
tenance of the wires in such position was negligence upon the part of
both companies.

Id.—Oversight and Repair of Wires in Streets — Obligation of
Electric-Lighting Company.—An electric-lighting company, carry-
ing electricity by its wires through the streets of a city in dangerous
quantities, is under an obligation not only to make the wires safe
by proper insulation, but to keep them so by vigilant oversight and
repair.

Id.—Contributory Negligence of Employee of Telephone Company.
—Where the employee of the telephone company, prior to going to
work on its wires, had satisfied himself that there was no high tension
upon the wires which he was examining and was about to test, and

there was nothing within his knowledge to lead him to believe that any of the other telephone wires, which in normal conditions were perfectly safe, had become dangerously overcharged, the question of his contributory negligence in doing the work was one for the jury.

Id.—Condition of Wires after Accident—Evidence of Removal of Wires in Contact.—In such action evidence is admissible on behalf of the plaintiff that after the accident an employee of the electric-lighting company found one of the telephone wires on the light wire and removed it. Such evidence was not of subsequent repairs, but was of a condition shown to have existed before and continuing after the accident, and tending to establish the cause of the accident by further showing that when the condition was changed the trouble was removed.

Id.—Verdict Not Excessive.—In this case a verdict for the plaintiff in the sum of thirty-five hundred dollars is held, in view of the injuries sustained, not to be excessive.

APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial. William H. Waste, Judge.

The facts are stated in the opinion of the court.

John J. McDonald, Garret W. McEnerney, Wm. B. Bosley, and Samuel Rosenheim, for Appellant.

Harry W. Pulcifer, and Stanley Moore, for Respondent.

HENSHAW, J.—Plaintiff was a "trouble shooter" in the employ of the defendant telephone company. His principal duty was to discover and repair minor difficulties attending the telephone service, defective telephones, fallen wires, weakness of batteries, and grounding of wires. Upon the day of the accident he had been sent to locate and remedy a trouble with the telephone belonging to the Pure Water Company. He had been told by his superior that the telephone of the Pure Water Company was "noisy," and had asked in return if there was "anything hot on it." He was told in reply that it seemed to be "a ground." By "a ground" is meant the interruption of the current by the crossing of wires or the breaking and falling of a telephone wire to the earth, or against some surface that acts as a conductor of electricity, and interrupts its continued flow along its proper wire. By his question whether there was anything "hot" on the wire plaintiff's meaning was

whether the telephone wires of the Pure Water Company had become surcharged from any cause with a dangerous quantity of electric fluid. Inasmuch as a telephone wire carries only about thirty volts, there is no danger attendant upon working amongst such wires under ordinary circumstances. But where a telephone wire comes in contact with a wire belonging to some other system using a high voltage, danger may result. Plaintiff inspected the telephone of the Pure Water Company, found it was working badly, examined the fuse-box and found that the fuses were in good condition. The fuses are thin hair-like wires of low fusibility which immediately melt and prevent any excess current of electricity from being carried over the telephone wires and into the house. He thus became satisfied that there was nothing "hot" on the wire, and proceeded down the street following the course of the wire, to see if he could locate a "ground." He thus in his progress came to a test pole, that is to say, a pole with a double cross-arm, between which the wires could be scraped, testers applied, and the direction of the trouble located. He ascended this pole to apply his tester to the Pure Water Company wires in order to ascertain whether the trouble lay between that point and the office of the Pure Water Company, or was further on. On ascending the pole he braced himself with one leg thrust over the cross-arm, and took out his pliers to prepare the Pure Water Company's wires for the application of the tester. Running along this pole were numerous other telephone wires. Amongst them were two running out San Pablo Avenue to Sixty-Third Street, and there crossing the street and passing over electric-light wires belonging to the defendant lighting company. These wires were the telephone wires of a schoolhouse known as the Bay School. As Dow was working with his pliers upon the Pure Water Company telephone wires, his hand, or the instrument which it held, came in contact with the Bay School telephone wires, and Dow fell back unconscious, hanging in the air by the leg which he had thrust under the brace. For the injuries which he sustained by this electric shock he brought this action for the recovery of damages against the telephone company and the lighting company. It was made to appear that the defendant lighting company controlled a wire on Telegraph Avenue carrying a high and dangerous voltage of electricity. The telephone company

had strung the telephone wires of the Bay School across the street and over the wire of the lighting company and in dangerous proximity thereto. Originally about six or eight inches separated them, but by the sagging of the telephone wires, when the wind blew or other disturbance caused the swaying of the telephone wires, they came into occasional contact with the light company's wires and received from them electricity in quantities extremely dangerous to human life. This occasional contact or "bouncing" contact, as it is called, had been noted by employees of the light company, and some ten days before the accident one had reported it to his superior, the foreman, saying that "somebody would get an awful rap out of it sometime." But the foreman replied, "To hell with it. It is up to the telephone company. Let them attend to it." It appears that the trouble with the Pure Water Company telephone was caused by the fact that the Bay School telephone wires running near it were thus occasionally supercharged from the lighting company wire, and the Pure Water Company wires in turn by induction drew to themselves some of the electric current, thus causing the defective service through the telephone, or making it, as it was called, "noisy." After the accident, the cause of it, the proximity and occasional touching of the Bay School telephone wires with the lighting wire, was remedied, and an inspection showed that the insulation of the light wires was old and chafed and that the voltage in them was transmitted to the Bay School telephone wires. Plaintiff charged that the Oakland Gas, Light & Heat Company negligently and carelessly allowed its insulation to become defective, and negligently and carelessly omitted to repair and renew it where it was crossed by the telephone wire; that the insulating material covering the lighting wires had become rotten, defective, and worn out, and in such condition that the current contained therein would escape into any wires which might come in contact therewith, and that this was well known to the defendants and unknown to plaintiff. Trial was had before a jury and verdict and judgment for plaintiff followed, from which latter and from the order of the court denying its motion for a new trial, the Gas, Light & Heat Company appeals.

Appellant first contends that the evidence fails to show any negligence upon its part. Herein it refers to the testimony

that the insulation was that usually employed by companies engaged in the same service, and that, notwithstanding the number of years for which this wire with its insulation had been in use, it was still good and sufficient insulation. It is further urged in this connection that as the rottenness of the insulation is the only charge of negligence against the telephone company, there may not be considered upon this appeal the argued negligence charged to both companies of allowing their wires to remain in too close proximity. But in this appellant is in error. The complaint not only charges the rottenness of the insulation, but it further charges that the telephone wires came in contact with the electric-light wires by reason of natural sagging "and in consequence of having been suspended too closely above said electric-light wire." Much evidence of the existing conditions was freely admitted. It was shown that there was a "jumping arc" of light caused by the contact or close proximity of the two wires, and that this was known to employees of the lighting company and reported to their foreman who had charge of that department, and that an inspection of the lighting company's wire after the accident showed an abrasion or fusing or a rottenness at the place of contact which unquestionably allowed the electricity in dangerous quantities to escape to the telephone wire. But even treating the case as one where the consideration of the negligence must be strictly limited to the defectiveness of the insulation, sufficient was shown to warrant the presentation of the question of appellant's negligence to the jury. Under the evidence offered by plaintiff it was established that there was dangerous proximity between the wires of the two companies and occasional contact between them. Moreover, the circumstance of the jumping arc made clear the fact of escaping electricity and called direct attention to the circumstance that insulation must of necessity be at that point imperfect; for the duty of the lighting company carrying electricity by its wires through the streets in such dangerous quantities was not only to make the wires safe by proper insulation, but to keep them so by vigilant oversight and repair. (*Fitzgerald* v. *Edison Electric Co.*, 200 Pa. 540, [86 Am. St. Rep. 732, 50 Atl. 161]; *Hebert* v. *Lake Charles Ice etc. Co.*, 111 La. 522, [100 Am. St. Rep. 519, 35 South. 731]; *Knowlton* v. *Des Moines Edison Light Co.*, 117 Iowa, 451, [90 N. W. 818]; *Girandi* v. *Electric Imp. Co.*,

107 Cal. 120, [48 Am. St. Rep. 114, 40 Pac. 108]; 2 Cooley on Torts, 3d ed., p. 1492; *Day* v. *Consolidated Light etc. Co.,* 136 Mo. App. 274, [117 S. W. 81]; *Luehrmann* v. *Laclede Gas Light Co.,* 127 Mo. App. 213, [104 S. W. 1128).] But, in addition, the charge contained in the complaint of the too close proximity between the wires itself embraced an allegation of negligence. It was shown that the wires were originally strung with six or eight inches space between the light wires and the telephone wires, while it is in evidence that a foot and a half or two feet clearance was necessary for safety, and that five or six feet would be even better if it were possible to gain that distance. It matters not that the telephone wire was the last placed and that this company, therefore, became in the first instance directly responsible for the negligent work. With knowledge upon the part of the appellant that the wire was thus dangerously close and liable to sag, the continued maintenance of the wires in this position was negligence upon the part of both companies. (*McKay* v. *Southern Bell Tel. Co.,* 111 Ala. 337, [56 Am. St. Rep. 59, 19 South. 695, 31 L. R. A. 589]; *Brown* v. *Consolidated etc. Power Co.,* (Mo.) 109 S. W. 1032; *Hebert* v. *Lake Charles etc. Light Co.,* 111 La. 522, [100 Am. St. Rep. 505, 35 South. 731]; *City Electric St. Ry. Co.* v. *Conery,* 61 Ark. 381, [54 Am. St. Rep. 262, 33 S. W. 426]; *Atlanta etc. St. Ry. Co.* v. *Ownings,* 97 Ga. 663, [25 S. E. 377, 33 L. R. A. 798]; *Brubaker* v. *Kansas City Electric Light Co.,* 130 Mo. App. 439, [110 S. W. 12]; *Hamilton* v. *Bordentown Elec. Light Co.,* 68 N. J. L. 85, [52 Atl. 290]; *Mayor of City of Madison* v. *Thomas,* 130 Ga. 153, [60 S. E. 461]; *Gentzkow* v. *Portland Ry. Co.,* (Or.) 102 Pac. 614; *Richmond etc. Electric Ry. Co.* v. *Rubin,* 102 Va. 809, [47 S. E. 834; *W. U. Telegraph Co.* v. *Griffith,* 104 Ga. 56, [30 S. E. 420].) In 15 Cyc. 474, the principle is stated in the following language: "Due care requires those using wires or conductors of electricity so to place and maintain them with reference to similar conducting agencies that dangerous contact is not probable; and where wires maintained concurrently by different parties are so erected or strung that one is likely to fall upon or come in contact with the other, thereby producing possible destructive consequences, either or both of them must make efforts to alıate such dangerous condition, and if an injury occurs through a neglect of such duty, both are liable."

It cannot be said, as matter of law, that the plaintiff was guilty of contributory negligence. He had satisfied himself that there was no high tension upon the wires which he was examining and was about to test; there was nothing within his knowledge to lead him to believe that any of the other telephone wires, which under normal conditions were perfectly safe, had become dangerously overcharged, and the question of his contributory negligence was, therefore, properly submitted to the jury. (*Paine* v. *Electric Illuminating & Power Co.,* 64 App. Div. 477, [72 N. Y. Supp. 279].)

The only ruling of the court in admitting and rejecting evidence which calls for specific mention is that where defendant's witness, over its objection, was compelled to testify that after the accident he visited San Pablo Avenue near the Bay School, and found one of the telephone wires on the light wire. He was asked the following question, "Did you remove that wire?" and answered that he did. It is contended that this was in the nature of objectionable evidence of subsequent repairs, which is not permissible to show prior neglect as to the condition of the machine, or implement. (*Sappenfield* v. *Main St. R. R. Co.,* 91 Cal. 48, [27 Pac. 590] ; *Limberg* v. *Lumber Co.,* 127 Cal. 604, [60 Pac. 176] ; *Helling* v. *Schindler,* 145 Cal. 313, [78 Pac. 710].) The evidence, however, was not admitted for this purpose nor addressed to this end. It was proper for the plaintiff to prove, as he did, that there had been contact between these wires before the accident, as well as to show contact after the accident. And in fixing the cause of the accident it was quite proper in this connection to show that when the wires were cleared the effect was to relieve both the school telephone wires and the Pure Water Company wires of all their trouble. It was evidence, therefore, not of subsequent repairs, but of a condition shown to have existed before the accident, and continuing after the accident, and tending to establish the cause of the accident by further showing that when the condition was changed the trouble was removed. (See *Brunger* v. *Pioneer Roll Paper Co.,* 6 Cal. App. 691, [92 Pac. 1043] ; *Dyas* v. *Southern Pacific Co.,* 140 Cal. 307, [73 Pac. 972].)

The instructions of the court to the jury make up some forty-four pages of the printed transcript. It would be unprofitable to discuss the objections which appellant makes to

some of them.  A reading of them discloses that the jury was fairly and dispassionately instructed upon every phase of the question pertinent for their consideration.  Nor can it be said that the verdict in the sum of thirty-five hundred dollars is excessive for the injuries sustained by Dow.  He was burned to the bone on the back of the head; he had burns on his hands; several burns on the sole of one of his feet one of which was two or three inches long.  They still caused him pain when on his feet to any extent or when walking any distance.  A breakdown of the arch of one foot resulted and was a progressive and permanent condition.  His ability to earn his livelihood was much impaired by the injuries to his hands and feet and he suffers much pain in the use of them.

The judgment and order appealed from are, therefore, affirmed.

Lorigan, J., Angellotti, J., Melvin, J., and Shaw, J., concurred.