Filed 7/31/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CARL McINTYRE et al., | D065469 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. CIVRS806233) |
| THE COLONIES-PACIFIC, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Keith D. Davis, Judge. Affirmed.

The Ehrlich Law Firm, Jeffrey Isaac Ehrlich; Shernoff Bidart Echeverria Bentley, Ricardo Echeverria and Steven Messner for Plaintiffs and Appellants.

Jones & Dyer, Gregory F. Dyer and Scott H. Cavanaugh for Defendant and Respondent.

In this negligence action, Carl McIntyre (McIntyre), Destiny McIntyre (Destiny), through her guardian ad litem, Theresa Nicole McIntyre, and My Jeweler, Inc. (My

Jeweler)[1] appeal a judgment entered following a jury verdict in favor of The Colonies-Pacific, LLC (Colonies). The McIntyres contend the trial court abused its discretion by excluding evidence, under Evidence Code section 1151,[2] that after an armed robbery of the My Jeweler store in Colonies's shopping center, it hired a security service to provide an unarmed guard to patrol the common areas of the property. Section 1151 excludes evidence of a defendant's subsequent remedial measures to prove "negligence or culpable conduct." The McIntyres assert section 1151 is inapplicable because the evidence was not offered to prove Colonies's breach of duty, or "negligence" within the meaning of section 1151, but rather to prove the causation element of a negligence cause of action. Alternatively, the McIntyres contend the court abused its discretion by not admitting the evidence as rebuttal to a comment Colonies's attorney made during opening statement. We find no abuse of discretion and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Colonies owns the Colonies Crossroads shopping center in Upland, part of which opened in late 2005. The common areas of the shopping center were under Colonies's exclusive control, but maintenance expenses were chargeable to tenants on a pro rata basis. Initially, Colonies did not budget anything for security services.

---

[1] We refer to plaintiffs collectively as the McIntyres.

[2] Further statutory references are to the Evidence Code unless otherwise specified.

McIntyre owns a jewelry business called My Jeweler. He had a store in Diamond Bar for many years and, in December 2005, he expanded by opening a store at Colonies Crossroads.

In January 2006, two stores in Colonies Crossroads were robbed at gunpoint, eight days apart. In May 2006, there was a shoplifting incident at another store, which police reportedly classified as a robbery because it resulted in a physical altercation in which the perpetrator pulled out a knife.

After the first two robberies, McIntyre expressed concern several times about the lack of security to Leanne Meissner, an employee of Colonies's property management company. Meissner told McIntyre that security was not budgeted and, under the covenants, conditions and restrictions, Colonies could not charge tenants for security without the approval of two anchor tenants. Additionally, one of the larger tenants sent Colonies a letter asking what it planned to do about security.

Meissner reported the robberies to her superior, but Colonies decided not to provide security or seek the anchor tenants' approval of an expense for security. Rather, Colonies asked the Upland Police Department to "step up the patrol through the center" because it believed "the police are much more capable than the . . . private security force."

On the morning of August 16, 2006, McIntyre took his then 14-year-old daughter, Destiny, to work with him at the Colonies Crossroads store. Shortly after the store opened, three men entered, two of whom had been in the store a week earlier acting suspiciously. Despite offering his cooperation, the men severely pistol whipped

3

McIntyre, and one of them tied up Destiny and held a gun to her head.  The men shattered glass display cases and stole jewelry, cash and digital security recording equipment.  After this robbery, Colonies hired a security service to provide an unarmed guard to patrol the common areas of the shopping center.

The McIntyres sued Colonies for negligence and premises liability, a species of negligence.  At the beginning of trial, Colonies brought a motion in limine under section 1151 to exclude evidence of subsequent remedial measures.  The McIntyres argued section 1151 was inapplicable because they did not intend to use the evidence to show Colonies was negligent by breaching its duty of care, but rather to show the lack of a security patrol was the cause of the robbery.  The McIntyres represented that after security services were provided, there were two incidents at the shopping center reported to police in "over five years," but no armed robberies.

Colonies argued "introduction of this evidence would be unduly prejudicial, confusing, [and] misleading to the jury because [it] wouldn't know that it's necessarily for causation or some other reason.  It would in the jury's mind tend to show negligence, so the whole purpose behind [section] 1151 would be defeated."  The court granted the motion, explaining:  "I think it really is evidence that comes under the category of subsequent remedial conduct.  I will also comment that I think it's perhaps a distinction only a lawyer could appreciate as to proving causation, which of course is an element in liability . . . .  It seems to me no matter how you phrase that evidence, in point of fact, the evidence is going to have an impact that . . . [section] 1151 is designed to preclude."

4

The parties presented the testimony of security consultants on the issues of duty and causation. In the opinion of the McIntyres' witness, Richard Sem, after the first two armed robberies, Colonies had a duty to hire an unarmed security guard to patrol the common areas in a marked vehicle. In Sem's view it was "more likely than not" that this measure would have deterred the robbers because the crime was premeditated rather than one of passion, with two of the robbers checking out the store earlier to see if it was a good target. Sem explained that armed guards are intended "to observe, to report, to be a deterrent by their visible presence, their uniform, their vehicle," and in addition to protecting the common areas, a patrol "functions to help deter crimes that happen within the stores like robberies or shoplifting."

Colonies's expert, Daniel Sullivan, disagreed that Colonies had any obligation to provide a security patrol. He explained the first two robberies "occurred in the stores, and there was no indication it had anything to do with the common area." He believed "an unarmed security guard is not really a deterrent to armed bandits" because "[a]rmed bandits by their very nature are pretty violent type people. They might be deterred by an armed policeman patrolling in a car, but a security guard, unless [he or she] was sitting in the doorway of the place, that doesn't deter them." Further, Sullivan testified that "[c]ommon area security is not designed for a specific store," and "there were no reasonable steps that should have been taken that would have prevented this robbery from occurring and there is no failure[] on [Colonies's] part that had any direct relation to this [jewelry store] robbery."

The court instructed the jury that negligence "is the failure to use reasonable care to prevent harm to oneself or to others. . . . A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation." It also instructed the jury, "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm."

The jury returned a special verdict finding Colonies was negligent, but its conduct was not a substantial factor in causing the McIntyres' damages. The McIntyres unsuccessfully moved for a new trial. Judgment was entered for Colonies in March 2012.

DISCUSSION

I

*Section 1151*

A

*Standard of Review*

We review a trial court's evidentiary ruling for abuse of discretion. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) "While trial judges ordinarily enjoy broad discretion with respect to the admission and exclusion of evidence in ruling on motions in limine [citation], a court's discretion is limited by the legal principles applicable to the case." (*Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288, 1294.) "Thus, if the trial court's in limine ruling was based upon a misinterpretation of applicable law, an abuse of discretion has been shown." (*Ibid.*)

6

II

*Analysis*

Section 1151 provides: "When, after the occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove *negligence* or culpable conduct[3] in connection with the event." (Italics added.) The McIntyres assert the term "negligence" in the statute refers exclusively to the breach of duty issue, and evidence of subsequent remedial measures is admissible to show the issue of causation. Colonies counters that the term "negligence" necessarily includes each element of a negligence cause of action, including causation.

" 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' " (*Realmuto v. Gagnard* (2003) 110 Cal.App.4th 193, 199.) "The words of the statute are the starting point. 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.] If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the

---

3    The term " 'culpable conduct' " encompasses conduct other than negligence, such as wanton and reckless misconduct. (*Ault v. International Harvester Co.* (1974) 13 Cal.3d 113, 118, fn. 3 (*Ault*).) This case does not involve " 'culpable conduct' " within the meaning of section 1151.

statutory scheme of which the statute is a part.' [Citation.] After considering these extrinsic aids, we 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977-978.)

"The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury. [Citation.] The elements of a cause of action for premises liability are the same as those for negligence: duty, breach, causation, and damages." (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.)

The term "negligence" in section 1151 is not defined, and because it is reasonably susceptible to both parties' interpretations, we consider the legislative history. Section 1151 was enacted in 1965. (Stats. 1965, ch. 299, § 2, p. 1297, eff. Jan. 1, 1967.) The statute "codifies well-settled law" (Cal. Law Revision Com. com., 29B Pt. 3B, West's Ann. Evid. Code (2009 ed.) foll. § 1511, p. 450) and promotes the public policy of encouraging remedial conduct. (*Ibid.* ["The admission of subsequent repairs to prove negligence would substantially discourage persons from making repairs after the occurrence of an accident."]; *Ault, supra,* 13 Cal.3d at p. 119 [§ 1151 "rests explicitly on this 'public policy' rationale"].)

As illustrative of settled law, the Law Revision Commission Comments cite the California Supreme Court opinion in *Helling v. Schindler* (1904) 145 Cal. 303 (*Helling*). In *Helling*, the plaintiff's hand "was badly cut by the knives of a buzz-planer while he was

8

using such planer in the course of his employment." (*Id.* at p. 305.)  He alleged the accident was caused by dull planer knives and a loose belt on the machine.  (*Id.* at pp. 305-306.)  The plaintiff obtained a judgment and the defendant employer appealed, contending the trial court erred by admitting evidence that after the accident the planer knives were sharpened and the belt was tightened.  (*Id.* at p. 311.)

The Supreme Court reversed the judgment, concluding the evidence was inadmissible to prove negligence, including the disputed element of causation.  (*Helling, supra,* 145 Cal. at p. 311.)  The court explained:  "The only conceivable effect of this evidence as to the sharpening of the knives, limited as it was to the mere fact of the making of repairs immediately after the accident, was to impute to defendant's foreman an admission to the effect that the knives were so dull as to render the machine unsafe for use, and that such condition was the *cause of the accident*.  Assuming that the foreman could bind the defendant by any such admission, it is now well settled in this state, in accord with the rule prevailing generally elsewhere, that evidence of precautions taken and repairs made after the happening of the accident is not admissible to show a *negligent* condition at the time of the accident."  (*Id.* at p. 312, first italics added.)

The *Helling* court added:  " 'The fact that an accident has happened, and some person has been injured, immediately puts a party on a higher plane of diligence and duty, from which he acts with a view of preventing the possibility of a similar accident, which should operate to commend rather than to condemn the person so acting.  If the subsequent act is made to reflect back upon the prior one, although it is done upon the theory that it is a mere admission, yet it virtually introduces into the transaction a new

9

element and test of negligence, which has no business there, not being in existence at the time.' " (*Helling, supra,* 145 Cal. at pp. 312-313, citing *Nally v. Hartford Carpet Co.* (1884) 51 Conn. 524.) Further: " 'To hold that an act of repairing affords evidence tending to show that a previous injury was the result of a defect in the appliances would deter a prudent person from making repairs.' " (*Helling,* at pp. 313-314, citing *Louisville etc. Ry. Co. v. Malone* (1895) 109 Ala. 518; 1 Witkin, Cal. Evidence (5th ed. 2012) Circumstantial Evidence, § 170, p. 593, citing *Helling,* at p. 312.)

The McIntyres do not cite the *Helling* opinion, and instead rely on *Dow v. Sunset Telephone and Telegraph Company* (1910) 157 Cal. 182 (*Dow*). In *Dow,* the plaintiff was injured while working on a phone line. Over a defense objection, a defense witness was compelled to testify that after the accident he found electrical wires that were in contact with each other (which caused the wire the plaintiff was working on to be supercharged) and he removed one of the wires. (*Id.* at p. 188.) The Supreme Court held the evidence was admissible "not of subsequent repairs, but of a condition shown to have existed before the accident, and continuing after the accident, and tending to establish the cause of the accident by further showing that when the condition was changed the trouble was removed." (*Ibid.*; *Roddiscraft v. Skelton Logging Co.* (1963) 212 Cal.App.2d 784, 801 ["An inference that a state of affairs existed at a certain time may be reinforced by evidence that it continued to exist at a subsequent time, provided that too long a period has not elapsed and conditions have not changed."], citing *Dow*, at p. 182.)

The *Dow* exception to the rule of inadmissibility is unhelpful because the conditions at the shopping center when the jewelry store was robbed were undisputed. In

other words, evidence that Colonies hired a security service after the robbery was unnecessary to show there was no security service prior to the robbery. *Dow* does not support the broad contention that subsequent remedial measures evidence is always admissible under the guise of showing the causation element of a negligence cause of action rather than a breach of the duty of care. Unlike *Helling, Dow* does not address the effect of a causation exception on the public policy of encouraging subsequent remedial measures. Cases are not authority for propositions not considered. (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.)[4]

The McIntyres' reliance on opinions discussing other exceptions to the general rule of inadmissibility is also misplaced. Section 1151 " 'does not require the exclusion of evidence of subsequent measures when offered for another purpose [besides negligence], such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.' " (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1169; *Ault, supra,* 13 Cal.3d at p. 119; *Baldwin Contracting Co. v. Winston Steel Works, Inc.* (1965) 236 Cal.App.2d 565, 573.) The evidence here does not go to any of these issues.

This case is akin to *Helling,* since the purpose of the subsequent remedial measures evidence was to show there was a "*negligent* condition" (*Helling, supra,* 145

---

[4] After *Dow,* the Supreme Court in *Anstead v. Pacific Gas & Electric Co.* (1928) 203 Cal. 634, 639-640, relied on *Helling*, in concluding evidence that power lines were subsequently moved should have been excluded in a negligence case, but admission of the evidence was not sufficiently prejudicial to warrant reversal. (See also, *Morris v. Sierra & San Francisco Power Co.* (1922) 57 Cal.App. 281, 296 [evidence of subsequent repairs and improvements to power line should have been excluded, but no error because of lack of objection].)

Cal. at p. 312) of the shopping center that caused the armed robbery.  The defendant's liability, however, " 'which renders him responsible for the accident depends on what he did and knew before the accident, and must be established by facts and circumstances which preceded it, and not by acts done by him after its occurrence.' "  (*Ibid.*, citing *Sappenfield v. Main St. & A.P.R. Co.* (1891) 91 Cal. 48, 62.)

Whether the issue is couched in terms of the due care or causation aspect of a negligence cause of action, admission of evidence that Colonies subsequently hired a security service, which improved safety, would discourage others similarly situated from undertaking such measures, an outcome that would thwart public policy.  Even though some exceptions to the rule of exclusion have been carved out, "courts and legislatures have frequently retained the exclusionary rule in negligence cases as a matter of 'public policy,' reasoning that the exclusion of such evidence may be necessary to avoid deterring individuals from making improvements or repairs after an accident has occurred."  (*Ault, supra,* 13 Cal.3d at p. 119.)  Under the particular facts here, we interpret section 1151 as excluding the McIntyres' proffered evidence.  Accordingly, we find no abuse of discretion.[5]

---

[5]    We are unpersuaded by opinions the McIntyres cite from other jurisdictions.  (See, e.g., *Wetherill v. University of Chicago* (N.D. Ill. 1983) 565 F.Supp. 1553, 1558 [under Rule 407 of the Federal Rules of Evidence, court admitted postinjury publications by drug company warning that in utero exposure to diethylstilbestrol was dangerous]; accord, *Rubel v. Eli Lilly and Co.* (S.D.N.Y. 1995) 1995 WL 110585, *1 ["Rule 407 does not require exclusion of subsequent measures where offered to prove causation rather than negligence or culpability"]; but see *Werner v. Upjohn Co., Inc.* (4th Cir. 1980) 628 F.2d 848, 859 ["Rule 407 does not allow for a new exception to prove causation"].)

II

*Opening Statement*

Alternatively, the McIntyres contend the subsequent remedial measures evidence should have been admitted for rebuttal purposes after the Colonies's attorney "opened the door" during opening statement by advising the jury that McIntyre had recently renewed My Jeweler's lease. The McIntyres assert the statement gave the jury the impression "McIntyre was choosing to stay in the very same location that he claimed was unsafe," thereby "damning . . . his credibility."

The court, however, had discretion to exclude the evidence of subsequent remedial measures on the ground counsel's brief statement was not evidence. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 595; *Winfred D. v. Michelin North America, Inc.* (2008) 165 Cal.App.4th 1011, 1028-1029.) Further, the court appropriately instructed the jury as follows: "What the attorneys say during the trial is not evidence. In their opening statements and closing arguments, the attorneys talk to you about the law and the evidence. What the lawyers say may help you understand the law and the evidence, but their statements and arguments are not evidence."

Under article VI, section 13, of the California Constitution, "[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of . . . the improper admission or rejection of evidence, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." " 'A miscarriage of justice . . . occurs . . . when it appears reasonably probable that were it not for the error a result more favorable to the

13

appellant could have been obtained.' [Citation.] 'Prejudice is not presumed and the burden is on the appellant to show its existence.' " (*Candelaria v. Avitia* (1990) 219 Cal.App.3d 1436, 1444.)

We are satisfied that the court's instructions prevented any prejudice to the McIntyres. (*Candelaria v. Avitia, supra,* 219 Cal.App.3d at p. 1444.) "We presume the jury would have followed such direction." (*Petrosyan v. Prince Corp.* (2013) 223 Cal.App.4th 587, 595.)

## DISPOSITION

The judgment is affirmed. Colonies is entitled to costs on appeal.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

O'ROURKE, J.

14