Filed 1/7/15  Williams v. Sidhu CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


**KENDALL WILLIAMS,**

    **Plaintiff and Appellant,**               **A138614**

    **v.**                                     **(Solano County**
                                            **Super. Ct. No. FCS039356)**

**PRITAM SIDHU et al.,**

    **Defendants and Respondents.**

_____/


    Appellant Kendall Williams sued a gas station and its owner (collectively, defendants) for negligence and premises liability.  A jury awarded Williams $225 and the court denied his new trial motion.  Williams appeals.  He contends the court erred by: (1) excluding evidence of subsequent remedial measures taken by defendants; (2) limiting testimony about his lack of insurance coverage; and (3) denying his new trial motion.

    We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

    In July 2011, Williams was a 35-year-old big rig truck driver.  He often stopped at Gill Sidhu Chevron (gas station).  On July 11, 2011, Williams parked his truck at the gas station.  He purchased coffee at the gas station's convenience store and was returning to his truck when he claimed he fell into a "two-foot deep cement hole" (hole or storm drain) "obscured" by a "Plexiglas sign" and suffered "injuries including bruises,

1

contusions, shock, leg and back injuries." He sued defendants for negligence and premises liability, seeking over $25,000 in damages.

Before trial, defendants moved to "prohibit any evidence or reference to insurance coverage[ ]" pursuant to Evidence Code section 1155.[1] Williams's counsel said "I'm not going to bring up insurance" and the court granted the motion. Defendants also moved to "prohibit any evidence or reference to the parties' wealth or financial status" and the court granted the motion.

Williams sought to introduce photographs showing defendants filled the storm drain with concrete shortly after the incident, claiming the evidence was relevant to establish the depth of the hole. Defense counsel objected and admitted the hole was two feet deep. After noting "subsequent, remedial [measures] aren't admissible[,]" the court reviewed the photographs of the cement-filled hole and determined they were inadmissible because they were "clearly designed to show to the jury, Look, [defendants] fixed it. They must have been negligent." The court excluded the photographs as evidence of subsequent remedial measures and rejected Williams's argument the evidence was relevant under the feasibility exception to the subsequent remedial measure rule. (§ 1151.)

*Trial*

Williams testified he parked his truck at defendants' gas station and purchased a cup of coffee in the gas station's convenience store. As he walked from the convenience store to his truck, he noticed an oil truck had pulled into the gas station and blocked his path to his truck. Williams thought the oil truck was preparing to leave the gas station, so he stepped up onto a curb to get out of the way. Williams was focused more on the oil truck than on where he was walking.

After signaling to the driver he was out of the way, Williams turned back toward his truck, took a few steps "at full stride" on the curb, and stepped onto a Plexiglas sign on the ground. Williams did not see the sign until he stepped on it, nor an orange

---

[1]     Unless noted, all further statutory references are to Evidence Code.

2

construction cone near the Plexiglas sign.[2]  Beneath the sign was a two-foot-deep storm drain.  Williams's foot went through the sign, to the bottom of the storm drain.  He felt a "shock" when he "hit" the bottom; then Williams "couldn't feel [his] legs" and "started to panic."  He hoisted himself out of the hole but could not get up because he "couldn't move [his] legs."

The oil truck driver approached Williams and told him to stay on the ground.  The driver called 911.  Using a disposable camera, the driver took a picture of Williams.  He gave the camera to Williams and said, "'you better take a few photos of this.'"  Williams took pictures of himself while he waited for help.  As paramedics arrived, the feeling in Williams's legs returned.  He had "intense pain" in his left thigh and told the paramedics his left leg was "'hurting pretty bad.'"

Paramedics took Williams to the hospital, where he was told he was "banged up" and "was going to be sore" but "all right."  Hospital staff gave Williams pain medication and antibiotics, and discharged him.  He did not complain about back pain at the hospital.  Williams's wife took Williams back to the gas station so he could "get [his] truck" and "finish [his] route."  Williams finished his three-hour shift; he felt the injury "wasn't really that serious" and he was "kind of more interested in getting back there on the road" even though he was "banged up[.]"

Williams went to work the next morning.  A week after the incident — on July 18, 2011 — Williams made an August 1, 2011 doctor's appointment.  He continued to work over the next several weeks, only missing a few days, even though his low back and left leg were "hurting[.]"  On August 1, 2011, Williams went to the emergency room because his neck was hurting.  He did not visit a doctor before then because he did not have medical insurance and did not "have the money to pay to go to a doctor[.]"[3]  At a follow

---

[2]      On cross-examination, defense counsel impeached Williams with deposition testimony where Williams admitted he saw the Plexiglas sign before he stepped on it.

[3]      Defense counsel objected when Williams's attorney tried to elicit testimony about how Williams tried to obtain medical insurance after the incident.  Williams's attorney explained the testimony was relevant to show Williams "couldn't call a Blue Cross

3

up appointment on August 4, 2011, Williams mentioned back pain for the first time. Williams stopped working as a truck driver, suffered from constant back pain, and used a cane to walk.

Dr. David C. Bradshaw testified as an expert for Williams. Dr. Bradshaw did not treat Williams after the incident and did not examine him until shortly before trial. He opined Williams herniated a disk in his back and pinched a nerve in his leg when he fell. Dr. Bradshaw explained back injuries sometimes take up to 24 hours to manifest and it is common for patients to wait several weeks before seeking treatment for a back injury. Dr. Bradshaw conceded, however, "[t]ruck driving is actually hazardous to your back. Truck drivers have a lot of back pain[.] . . . Truck driving is hard on your back[.]" He also admitted Williams had previously sought disability status, claiming he could not perform a sedentary job because of knee pain.

Defendants conceded the storm drain was a dangerous condition but argued it was unreasonable for Williams to walk on the curb, ignore an orange cone, and step on an unfamiliar Plexiglas object. They also argued the only injury Williams suffered was a leg bruise and emphasized the length of time Williams waited to see a doctor. Defendants argued Williams was "reasonably entitled to . . . the emergency room bill, the ambulance bill, some pain and suffering for the period of time it took for his leg bruise to [ ] heal, and that is it."

Dr. Eldan Eichbaum testified as a defense expert. After reviewing Williams's medical records and examining Williams, Dr. Eichbaum testified Williams: (1) had a previous neck injury; (2) suffered from chronic knee pain; (3) may have "slightly exaggerated" his symptoms from the incident; and (4) told his doctor in February 2012 he

---

doctor [after the incident], because he didn't have one. He was trying to act in a reasonable manner to [limit] his damages . . . he's explaining what he was doing to try to get enrolled in the [health coverage] program . . . at the clinic to get medical care[.]" The court concluded, "the detail is not relevant. What's relevant is why didn't you go to the doctor? I [didn't] have the money. [¶] And that's all the further you need to go. That explains it."

4

was experiencing "no symptoms of pain."  Dr. Eichbaum would not have expected Williams to "have had a neck injury from the fall" and explained that if a fall had caused a back injury, he would have expected to have seen the symptoms manifest "sooner [rather] than later."  According to Dr. Eichbaum, Williams might need treatment for "flareups" in the future, but he did not need future physical therapy, MRI scans, back x-rays, or epidurals.

***Verdict and New Trial Motion***

A jury determined defendants' negligence was a substantial factor in causing Williams's injuries and awarded him $1,500 in past noneconomic loss.  The jury also determined, however, Williams was 85 percent at fault, reducing his damages award to $225.  The court entered and served the judgment.

Williams moved for a new trial on the grounds of jury misconduct, inadequate damages, and insufficiency of the evidence to justify the verdict (Code Civ. Proc., § 657).  First, Williams argued the jurors committed misconduct during deliberations by "openly discuss[ing] and speculat[ing]" whether he fell into the storm drain hole.  He offered two juror declarations to "demonstrate that the jury openly discussed a matter that was not contested — i.e., whether [he] fell into the hole — and came to an agreement that he had not, a determination contrary to a fact agreed upon by the parties[.]"  In their declarations, both jurors stated: "In reaching a verdict, the jury turned to detailed discussions of whether Mr. Williams fell into the storm drain hole. [¶] Based upon those discussions, the jury came to an agreement that Mr. Williams had not fallen into the storm drain hole. [¶] The agreement that Mr. Williams did not fall into the storm drain hole was based upon the pictorial evidence that was presented to the jury."  Williams also claimed insufficient evidence supported the jury's finding that he did not fall into the hole and the damages were inadequate because the evidence did "not support a *de minimis* award."

In opposition, defendants argued there was no jury misconduct because: (1) the parties did not stipulate Williams fell into the hole and the jury was free to disbelieve Williams's claim and conclude he did not fall into the hole; and (2) Williams was

5

attacking the jury's mental process, which was specifically prohibited. Defendants also contended evidence supported the jury's conclusion that Williams did not fall into the hole and the damages were not inadequate because "medical expert testimony" demonstrated "the only injury sustained by [Williams] was a bruise to the thigh, which resolved. Whether that bruise was caused from falling to the ground or from falling into the hole, if, the jury believed the bruise was the only injury then a verdict of $1500 for pain and suffering is completely adequate."

The court denied the motion in a written order. It determined Williams did not establish "there was jury misconduct. . . . There is no evidence that [Williams] and defendant[s] agreed not to put before the jury the issue of whether . . . Williams fell in the storm drain hole, as [Williams] contend[s]. In addition, the juror declarations submitted in support of [Williams's] claim of jury misconduct, . . . do not relate to overt facts that are objectively ascertainable. They relate to the subjective reasoning processes of the jurors that can be neither corroborated nor disproved. Therefore, they are inadmissible under . . . Section 1150." The court also concluded the evidence supporting the verdict "was not insufficient, and that the damages awarded were not inadequate."

## DISCUSSION

### I.

### *The Appeal is Timely*

Defendants urge us to dismiss the appeal because Williams filed his notice of appeal more than 30 days after his new trial motion was denied by operation of law. (See Code Civ. Proc., § 660; *ECC Construction, Inc. v. Oak Park Calabasas Homeowners Assn.* (2004) 118 Cal.App.4th 1031, 1036; Cal. Rules of Court, rules 8.104(a)(1)(A), 8.108(b)(1)(A)-(C).) We conclude the appeal was timely filed.

Pursuant to California Rules of Court, rule 8.108, the trial court's denial of a timely motion for new trial extends the time to appeal "until the earliest of: [¶] (A) 30 days after the superior court clerk or a party serves an order denying the motion or a notice of entry of that order; [¶] (B) 30 days after denial of the motion by operation of

6

law; or [¶] (C) 180 days after entry of judgment." (Cal. Rules of Court, rule 8.108(b)(1)(A)-(C).) "Denial of a new trial motion by operation of law occurs in one of two ways: (1) By expiration of 60 days from the date of the notice of entry of judgment (a jurisdictional limitation) or (2) by the entry of the new trial order in the permanent minutes of the court." (*Miller v. United Services Automobile Assn.* (1989) 213 Cal.App.3d 222, 226, fn. omitted; see also Code Civ. Proc., § 660.)

Here, the 60-day period for the trial court to rule on Williams's new trial motion did not begin to run when the clerk served a file-stamped copy of the judgment on January 28, 2013, because the judgment did not affirmatively state notice was given "'upon order by the court'" or "under Code of Civil Proecedure section 664.5." (See *Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 64 (*Van Beurden*).) "Service of notice of entry of judgment by the clerk will commence the 60-day period for ruling on the new trial motion only if the clerk's notice of entry (or a served copy of the judgment) affirmatively states that notice was given 'upon order by the court' or 'under CCP § 664.5." (1 Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2014) ¶ 3:67.1, p. 3-34.)

Williams's new trial was not denied by operation of law. It was denied by written order on April 2, 2013 and the court clerk served the order that same day. Pursuant to California Rules of Court, rule 8.108(b)(1)(A), Williams had until May 2, 2013 — "30 days after the superior court clerk or a party serves an order denying the motion [for new trial] or a notice of entry of that order" — to file a notice of appeal. Williams filed his notice of appeal on May 2, 2013. As a result, his appeal is timely. (*Van Beurden, supra,* 15 Cal.4th at pp. 66-67.)

II.

*The Court Did Not Err by Excluding Evidence of*
*Subsequent Remedial Measures*

Williams contends the court erred by excluding evidence defendants filled the storm drain with concrete shortly after the incident. We review the court's evidentiary

7

ruling for abuse of discretion.  (*McIntyre v. The Colonies-Pacific, LLC* (2014) 228 Cal.App.4th 664, 670 (*McIntyre*) (S221005, review den. 11/12/14).)

Section 1151 provides: "When, after the occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event."  The statute "promotes the public policy of encouraging remedial conduct . . ." (*McIntyre, supra,* 228 Cal.App.4th at p. 671; *Ault v. International Harvester Co.* (1974) 13 Cal.3d 113, 119-120.)  Section 1151, however, "'does not require the exclusion of evidence of subsequent measures when offered for another purpose [besides negligence], such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.'"  [Citations.]" (*McIntyre, supra,* 228 Cal.App.4th at p. 673.)

Williams claims evidence defendants filled the storm drain with cement after the incident was admissible not to prove liability, but to show "the dangerousness of [the] condition" and the "practical feasibility and low cost" to correct it.  We are not persuaded for several reasons.  First, Williams concedes his real purpose in offering the evidence was "to demonstrate just how unreasonable [defendants] had acted in failing to remedy the dangerous condition on their property until after the accident."  Second, dangerousness of the condition and feasibility were not issues in the case.  Defendants conceded the storm drain was a dangerous condition and there was no dispute about the depth of the hole, or whether it was feasible to fill it with cement.  (See *McIntyre, supra,* 228 Cal.App.4th at p. 673 ["feasibility of precautionary measures, if controverted"]; *People v. Lockheed Shipbuilding & Constr. Co.* (1975) 50 Cal.App.3d Supp. 15, 36 [feasibility exception applies only when "a defendant declares that nothing could have been done to avoid the accident"].)

Finally, the exclusion of defendants' subsequent remedial measures did not — as Williams contends — preclude him from offering evidence of feasibility because Williams's engineering expert testified a grate is typically placed over a storm drain to

8

"keep things from going into the drain that you don't want, like people[.]" The court properly excluded the subsequent remedial measures evidence.[4] (*McIntyre, supra,* 228 Cal.App.4th at p. 674 [landlord's post-robbery hiring of security guards was inadmissible evidence of subsequent precautionary measures].)

III.

*The Court Did Not Err by Limiting Testimony About Williams's Lack of Medical Insurance and Any Assumed Error Was Harmless*

Williams argues the court erred by excluding evidence of his "gap in insurance coverage[.]" He claims the court precluded him from "explaining lack of medical coverage and his attempts to obtain coverage as the reason for a delay in his treatment." This argument fails for several reasons. First — and as described above — the court allowed Williams to testify about his lack of medical insurance and the reason for his delay in seeking treatment. Details about what Williams did after the incident to obtain medical insurance were not relevant, nor was Williams's "medical coverage situation" over the years. (§§ 350, 352.) What *was* relevant was *why* Williams did not seek treatment before August 1, 2011 and the court allowed him to testify about how his financial condition and lack of medical insurance precluded him from seeking treatment before that date. Excluding additional testimony regarding Williams's efforts to obtain medical insurance after the incident was not an abuse of discretion.

Williams's argument fails for the additional reason he cannot establish any assumed error was prejudicial. (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449.) Williams testified he did not seek medical treatment before August 1, 2011 because he did not have medical insurance or the "money to pay to go to a doctor[.]" Additional testimony about his efforts to obtain insurance coverage after he was injured would not have altered the outcome because: (1) after he left the hospital, Williams felt his injury "wasn't really that serious" and he completed his shift;

---

[4]     Williams's reliance on *Collins v. Navistar, Inc.* (2013) 214 Cal.App.4th 1486 is misplaced because this is not a products liability case.

(2) Williams worked for several weeks after the incident; (3) he did not complain of back pain until August 4, 2011, almost a month after the incident; (4) Williams's expert conceded driving a truck is "hazardous" for one's back; (5) Williams had preexisting neck and knee injuries; and (6) defendants' expert testified falling into the storm drain was unlikely to produce a neck injury, symptoms of any back injury would have manifested "sooner [rather] than later[,]" and Williams could have exaggerated his injuries.

IV.

*The Court Properly Denied Williams's New Trial Motion*

Williams claims the court erred by denying his new trial motion. As stated above, the court concluded the juror declarations offered in support of the new trial motion were inadmissible because they did "not relate to overt facts that are objectively ascertainable. They relate to the subjective reasoning processes of the jurors that can be neither corroborated nor disproved." The court determined Williams did not establish "there was jury misconduct" and there was no evidence Williams and defendants "agreed not to put before the jury the issue of whether . . . Williams fell in the storm drain hole, as [Williams] contend[s]." Finally, the court determined "the evidence supporting the jury's verdict was not insufficient, and that the damages awarded were not inadequate."

Williams contends he was entitled to a new trial based on juror misconduct. "Juror misconduct is one of the specified grounds for granting a new trial. [Citation.] The trial court must undertake a three-step process to evaluate a motion for new trial based on juror misconduct. The trial court must first determine whether the affidavits supporting the motion are admissible. [Citation.]"[5] (*Barboni v. Tuomi* (2012) 210

---

[5] Section 1150, subdivision (a) states: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

10

Cal.App.4th 340, 345.) "Second, 'If the evidence is admissible, the trial court must determine whether the facts establish misconduct. [Citation.]' [Citation.] 'The moving party bears the burden of establishing juror misconduct. [Citations.]' [Citation.] . . . [¶] '"Lastly, assuming misconduct, the trial court must determine whether the misconduct was prejudicial." [Citation.]' [Citation.]" (*Id.* at p. 345.) "A trial court has broad discretion in ruling on each of these issues, and its rulings will not be disturbed absent a clear abuse of discretion." (*People v. Dorsey* (1995) 34 Cal.App.4th 694, 704.)

The court determined the juror declarations supporting Williams's new trial motion were inadmissible. This conclusion was not an abuse of discretion. "Evidence of jurors' internal thought processes is inadmissible to impeach a verdict. [Citations.] Only evidence as to objectively ascertainable statements, conduct, conditions, or events is admissible to impeach a verdict. [Citations.] Juror declarations are admissible to the extent that they describe overt acts constituting jury misconduct, but they are inadmissible to the extent that they describe the effect of any event on a juror's subjective reasoning process. [Citation.] Accordingly, juror declarations are inadmissible to the extent that they purport to describe the jurors' understanding of the instructions or how they arrived at their verdict. [Citations.]" (*Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1124-1125, fn. omitted.)

As he did in the lower court, Williams relies on *Krouse v. Graham* (1977) 19 Cal.3d 59 (*Krouse*). There, the California Supreme Court determined juror declarations supporting a new trial motion were admissible because they suggested the jurors made an "express agreement" to include nonrecoverable attorney fees in their verdict. (*Id*. at pp. 80, 81.) *Krouse* is distinguishable. Here, the jurors did not agree to ignore the law. Although the declarations referred to what the jurors discussed and agreed, the essence of the declarations described the jury's "subjective collective mental process purporting to show *how* the verdict was reached." (*Ford v. Bennacka* (1990) 226 Cal.App.3d 330, 336, fn. omitted.) Because Williams's "attempted impeachment of the verdict rested solely on an attack on the jury's subjective mental processes in reaching the verdict, the court

11

properly denied a new trial." (*Ibid.*) Having reached this result, we need not address Williams's claim that the jurors committed prejudicial misconduct.[6]

DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

---

[6] We reject Williams's claim that the court should have granted his new trial motion "based on insufficiency of evidence to justify the inherently inconsistent verdict." Substantial evidence supports the verdict. (*Holguin v. DISH Network LLC* (2014) 229 Cal.App.4th 1310, 1326.) Williams's disagreement with the damages award does not demonstrate insufficiency of the evidence.

We note the California Supreme Court's recent decision in *People v. Lavender* (Dec. 8, 2014, S209975) ___ P.3d ___ [2014 WL 6864243]. *Lavender* has no application here because the parties in that case agreed "the deliberations were imperfect" and the sole issue was whether the jurors' misconduct was prejudicial.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.

13