Filed 8/24/23  M.W. v. A.W. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| M.W., | D080452 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 21FL012404C) |
| A.W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Jose S. Castillo, Judge.  Affirmed.

Goldfaden Law and Erik Hoyle, for Defendant and Appellant.

Law Office of Linda Cianciolo and Linda Cianciolo, for Plaintiff and Respondent.

INTRODUCTION

A.W.[1] (Mother) appeals from a three-year domestic violence restraining order (DVRO) issued against her for the protection of M.W. (Father) and their

---

[1]    Pursuant to rule 8.90 of the California Rules of Court, we refer to the parties by first and last initials only.

two children. Mother contends the trial court abused its discretion by (1) allowing her ex-husband to offer testimony consisting of impermissible character evidence, (2) failing to fully consider testimonial evidence from two police officers, (3) excluding a text message Mother sent her father, (4) relying upon Father's testimony instead of making an adverse inference based on his failure to produce photographs and journal entries supporting his abuse claims, and (5) including the couple's children as protected parties under the DVRO. We conclude the trial court did not abuse its discretion, and we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father married in June 2019 and separated in October 2021. They share two young children, V.W., and B.W., and Mother has an older daughter from a previous marriage. Mother was a stay-at-home parent and the primary caregiver prior to the October 2021 incident that precipitated a temporary restraining order.

According to Father, he and Mother had an argument about money in mid-September 2021.[2] Father sat down with B.W., who was six-months old at the time, at which point Mother ran at him and began punching him. He held up his legs to block her. After punching him 18 to 20 times, he claimed she sunk her nails into both calves and broke off one of her nails in his leg in the process. Father did not call the police following this incident. Mother denies the incident occurred.

On October 18, 2021, Mother asked to use Father's credit card. Father declined, and Mother went to his bag and started to unzip it to remove Father's wallet. Father said he tried to take the bag from her, but Mother

---

[2]     There was some dispute as to whether this incident occurred in August or September.

jerked away in what he described as a "knee-jerk reaction" and struck Father in the right arm. In describing the incident, Mother said when she grabbed the bag, Father grabbed her right bicep and pulled her off the bag.

Once Father regained control of it, he stated that Mother started to scream, "Don't touch me, you're going to pay for this, you can't touch me, I'm taking the kids." Mother walked to the bedroom and Father followed her. The baby remained where she was by a table, but V.W. followed Mother and she carried him into the bedroom. After she set down V.W., Father said Mother turned and slammed the door twice, telling Father to stop following her. He claimed he had already put his arm and foot in the door and that they became stuck as she continued pushing the door. Mother acknowledged that she continued to push the door closed but said he was intentionally using his body to keep her from doing it. In the process, she claimed he berated her, saying "you can't close doors in my house, this is my house, I'm on the lease."

After Father freed himself, he returned to the living room and retrieved the infant, who was crying. Mother then came out of the bedroom and Father handed her the baby. Mother returned to the bedroom with the baby and locked the door. Father called 911 and told the operator his wife had struck him, had slammed the door on his arm, and was locked in a room with their two children and threatening to leave with them.

Three police officers arrived, separately interviewed Mother and Father, and then gave Father the two children and arrested Mother. According to the police report, Father appeared calm, while Mother was crying and appeared fearful. Father told police there had been approximately 10 unreported incidents within the past six weeks and that Mother was becoming more violent.

Father did not immediately sustain any visible injuries, but later that day he said an injury became inflamed and he emailed a photograph of it to Detective Janine Van Antwerp. He asserts he never received a return email after doing so.

The day of the incident, Father filed a request for a DVRO protecting himself and the children from Mother. The trial court issued a temporary restraining order (TRO) that required Mother to move out of the family residence and stay at least 100 yards away from Father, the children, and their home. It denied Mother custody or visitation. A hearing was set for early November 2021.

At the November 2021 hearing, the trial court continued the TRO and granted custody to Father but authorized four days per week of supervised visitation with Mother. The court left these orders in place after a February 2022 hearing.

On April 5, 2022, the court convened a hearing on the DVRO petition. At the outset of the hearing, counsel stipulated to admit the police report from October 18, 2021, as evidence. Mother's ex-husband then testified about her behavior and use of physical violence during their relationship, which spanned from 2007 to 2015. He indicated that they shared custody of their daughter but that after Mother's arrest in October 2021, he sought sole legal and physical custody. A former roommate of the couple testified about his interactions with the family, but he did not live with them after 2019 and was not present during the October 2021 incident.

Father then took the stand. He indicated that he had two photographs of the leg injuries caused by Mother's nails in September 2021, but he did not submit them to the court because his face was not in the pictures. He also

claimed to have written about the incident in a journal, but he did not offer the journal entries during the hearing.

According to Father, Mother's outbursts became more violent and escalated in the six weeks prior to the October 2021 incident. Father felt that a restraining order protecting him as well as the children was warranted until he was assured Mother was "actually going to make some changes."

Father's father then testified that he routinely visited San Diego and communicated with both Father and Mother in an effort to help reduce the tension between them. He said Mother admitted to him that she struck Father in September. His understanding from discussions with the couple during the first couple weeks of October 2021 was that Mother had threatened to leave Father.

Next, Mother solicited testimony from the police officers who responded to the October 2021 incident. Officer Sarafina Martinez indicated that Mother was crying and upset that day. Detective Van Antwerp testified that she never received photographs or any other information regarding the incident from Father. She explained that she was the one who reviewed the evidence and made the decision not to forward the case to the city attorney's office for criminal prosecution. According to Detective Van Antwerp, she informed Father of her decision by telephone two days after the October incident.

Mother testified last. She said she had decided by the beginning of October 2021 to leave Father. She listed his substance addictions, lies, and mistreatment of her and her older daughter as reasons for wanting to leave. In preparation, she stated she had reached out to her church for resources regarding leaving, had made a safety plan with her therapist, and had been looking for apartments.

Mother asserted that in the days leading up to the October 2021 incident, she and Father were having daily conversations about the dissolution of their marriage, and that Father had expressed his fear that Mother would take the children. She also confirmed that she had taken an anger management class.

At the conclusion of the hearing, the trial court noted that it had considered the parties' respective testimony and the exhibits that were admitted into evidence. It made clear that it would focus on the September and October 2021 incidents. It gave little to no weight to either party's witnesses because the primary incidents occurred in 2021, and the witnesses were not present during the altercations. It further noted that the police officers' testimony was not particularly helpful because it was focused primarily on the criminal aspects of the case. Although the court acknowledged "a discussion or argument regarding missing evidence or photos," it stated that "an affidavit of testimony is enough to satisfy the burden of proof." The court credited Father's testimony and found that he was in reasonable apprehension of imminent serious bodily injury.

Under the totality of the circumstances, the court found that Father met his burden of showing by a preponderance of the evidence that abuse occurred within the meaning of the Domestic Violence Prevention Act (DVPA). While it was not clear to the court why Father followed Mother to the bedroom when she was trying to create space during the October incident, it noted that she admitted that she closed the door on him. The court suggested this incident alone may not have met the standard, but that it did when coupled with the September dispute. During that exchange, the court highlighted that it was Mother who followed Father this time when he tried to walk away with the child, and that she then punched and scratched him.

6

The court issued a DVRO for a period of three years and included the children as protected parties. It found good cause to do so because Father was holding one of the children during the September incident and both children were present during the October altercation. Because the court found that Mother perpetrated domestic violence, it held that the Family Code section 3044 presumption applied and that an award of custody to Mother would be detrimental the children. (Fam. Code[3], § 3044, subd. (a).) The court set a further evidentiary hearing to address any potential changes to the custody arrangement in light of the presumption.

DISCUSSION

A.    *Standard of Review*

We review the grant or denial of a DVRO for abuse of discretion. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226; *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420-421.) " 'To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review.' " (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.) This means "[w]e draw all reasonable inferences in support of the court's ruling and defer to the court's express or implied findings when supported by substantial evidence." (*J.M. & G.H.* (2014) 228 Cal.App.4th 925, 935.) If substantial evidence exists, it does not matter if we would believe other evidence, draw other reasonable inferences, or reach a different conclusion. (*In re Marriage of DeSouza* (2020) 54 Cal.App.5th 25, 33 (*DeSouza*).) "All conflicts in the evidence are drawn in favor of the judgment," and "[w]hen supported by substantial evidence, we must defer to the trial court's findings," including findings regarding witness credibility.

---

3      Statutory references are to the Family Code unless otherwise specified.

(*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 364-365 (*Niko*).)  Further, "[i]n many domestic violence cases, . . . the sole evidence of abuse will be the survivor's own testimony which, standing alone, can be sufficient to establish a fact:  'The testimony of one witness, even that of a party, may constitute substantial evidence.' "  (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 119 (*F.M. & M.M.*).)

B.      *Challenge to the Testimony of Mother's Ex-Husband*

Mother contends the trial court abused its discretion by allowing the testimony of her ex-husband.  Specifically, she argues her ex-husband's testimony regarding disagreements he and Mother had during their relationship consisted of impermissible and prejudicial character evidence.

Father responds that Mother forfeited this argument by not objecting during trial to the ex-husband's testimony.  Even if we were to consider the argument, Father contends Mother has provided no evidence showing a reasonable probability of a more favorable result had her ex-husband not testified.

We agree that Mother forfeited this argument.  We generally do not consider contentions raised for the first time on appeal.  (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1528.)  If an objection could have been made in the trial court, but was not, the reviewing court will not ordinarily consider a challenge to the trial court's ruling.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 (*S.B.*); *People v. Davis* (2008) 168 Cal.App.4th 617, 627 [timely and specific objection generally required]; Evid. Code, § 353, subd. (a).)

At the beginning of the ex-husband's testimony, Father's counsel asked, "Do you recall any specific incidents that occurred while you were dating [Mother] now, beginning in 2007?"  He responded, "Yes.  I recall numerous

incidents over the time that we were together." After Father's counsel asked him to describe those incidents, Mother's counsel objected as to relevance. The trial court overruled the objection, and then Mother's counsel added, "and probative." The court did not respond to this last interjection and the ex-husband went on to describe multiple instances when Mother engaged in physical violence. Mother's counsel did not raise any further objections to the nature of the testimony, nor did she at any time object to him testifying generally regarding Mother's propensity for violence or other character evidence.

"[A] relevance objection does not, in itself, alert the trial court to the claim that the testimony objected to is inadmissible character evidence." (*People v. Demetrulias* (2006) 39 Cal.4th 1, 19-21 [concluding that defendant forfeited his claim regarding admission of character evidence by failing to object on this ground].) Mother made no other objections and did not otherwise raise any concerns about character evidence. Therefore, we conclude the failure to specify the character evidence claim now presented before the trial court forfeited this argument on appeal. (*S.B.*, *supra*, 32 Cal.4th at p. 1293.)

C.     *Alleged Failure to Consider Testimony of Law Enforcement Officers*

Mother next argues the court abused its discretion by not fully considering the evidence presented by two officers from the San Diego Police Department. Mother points specifically to Officer Martinez's testimony that Father appeared calm while Mother was crying and upset, and that Mother told Officer Martinez Father "grabbed her arm to pull her back away from his bag" and "grabbed her by the bicep and pulled her back." She contends this evidence was highly relevant because Officer Martinez was a percipient witness of the events immediately following the October 2021 incident.

9

Likewise, Mother asserts that Detective Van Antwerp's testimony regarding her investigation provided direct impeachment evidence against Father.

We conclude the court did not abuse its discretion in determining that the police officers' testimony was not particularly helpful. Officer Martinez's observations of the couple and the statements Mother made to her were also in Officer Martinez's report. Thus, her testimony was cumulative. In fact, the court would have acted within its discretion had it excluded Officer Martinez's testimony altogether as trial judges have broad discretion to curb cumulative evidence. (Evid. Code, § 352; *People v. Robinson* (2020) 47 Cal.App.5th 1027, 1032 (*Robinson*).)

To the extent Detective Van Antwerp's testimony rebutted Father's claims and weighed against his credibility, it too was cumulative and of little value. Mother submits that Detective Van Antwerp impeached Father by refuting his claims that (1) he emailed photographs to her and (2) was unaware that criminal charges would not be brought against Mother. But Father himself provided grounds for the court to discount his credibility by testifying at the hearing that he had the photographs supporting his abuse allegations in his possession, yet still failing to produce them for the court's consideration. As to Father's knowledge of the status of the criminal charges, Mother does not clarify the probative value of this evidence. The implication is that Detective Van Antwerp's testimony showed Father was untruthful, but Mother does not explain how this one small instance would have overcome the totality of the evidence the court considered in weighing Father's credibility against Mother's. Furthermore, the fact that the court described the testimony as unhelpful suggests that it did consider the evidence but did not find it persuasive. We will not disturb weight and

10

credibility determinations on appeal. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 334 (*Sav-On Drug Stores*).)

D.    *Exclusion of Text Message Evidence*

Mother contends the trial court erroneously excluded a September 2021 screenshot of a text message she sent her father based on lack of foundation. She asserted the text message showed that Father had been emotionally abusing her and had recently begun treatment for substance abuse. It also supported her testimony that she had made plans to leave Father. She argues the evidence would have bolstered her position that Father had clear motive to lie because he was fearful Mother would be granted legal and physical custody of their children.

Even assuming the trial court erred by excluding the text message on foundational grounds, the error was harmless. Under article VI, section 13, of the California Constitution, " '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of . . . the improper admission or rejection of evidence, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' " (See also Evid. Code, § 353, subd. (b) ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] . . . [¶] . . . the error or errors complained of resulted in a miscarriage of justice"].) " ' "A miscarriage of justice . . . occurs . . . when it appears reasonably probable that were it not for the error a result more favorable to the appellant could have been obtained." [Citation.] "Prejudice is not presumed and the burden is on the appellant to show its existence." ' " (*McIntyre v. The Colonies-Pacific, LLC* (2014) 228 Cal.App.4th 664, 674-675 (*McIntyre*).)

11

Here, the topics addressed were cumulative of other evidence in the record.  (See *Robinson*, *supra*, 47 Cal.App.5th at p. 1032.)  Father admitted he enrolled in Narcotics Anonymous at the end of September 2021, and Mother confirmed during her testimony that he began attending meetings and addiction counseling at that time.  She also testified that he mistreated her, she had decided by the beginning of October to leave him, and she had taken steps towards that goal.  Mother indicated they had "daily conversations about the dissol[ution] of [their] marriage" during which she said Father frequently expressed his fear that Mother would take the children.[4]  Thus, the record already included evidence supporting Father's purported motive to lie.  And, given that the text message was written *by* Mother and during roughly the same time frame addressed in other testimony, it adds little to the existing evidence.  Ultimately, while the text message may have slightly bolstered the factual underpinnings for this motive, Mother has not shown that it was reasonably probable the court would not have issued the DVRO had it admitted the text message. (*McIntyre*, *supra*, 228 Cal.App.4th at pp. 674-675.)

E.  *Consideration of Father's Testimony Instead of Making an Adverse Inference Based on Father's Failure to Produce the Photographs and Journal*

Mother argues the trial court abused its discretion when it relied upon Father's testimony regarding the September and October 2021 incidents. Father had revealed that he had photographic evidence of the injuries he allegedly sustained, as well as written journal entries regarding the

---

[4]  Again, although it is unclear how little weight the trial court afforded the testimony of other witnesses, Father's father also testified that he participated in conversations with the couple during which Mother threatened to leave Father.

September 2021 incident. He claimed to have emailed the photographs to Detective Van Antwerp, but she testified that she never received them. Father did not otherwise offer the photographs or journal at the hearing. Under these circumstances, Mother contends the court should have made an adverse inference against Father pursuant to Evidence Code section 412, which provides that, "[i]f weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust." (Evid. Code, § 412.) Had it done so, Mother asserts it is more than reasonably probable she would have obtained a more favorable result because the court relied almost exclusively on Father's testimony and claims of abuse.

Father responds that he testified as to why he did not produce the photographs and that, regardless, the testimony of one witness is sufficient to support a finding.

As an initial matter, contrary to Mother's statement, the trial court did not rely upon the existence of, and consider as evidence, Father's photographs and journal entries. It said only that "[t]here was a discussion or argument regarding missing evidence or photos, and the court notes that in these types of cases, an affidavit of testimony is enough to satisfy the burden of proof." This statement indicates that the court acknowledged the evidence was missing but that this fact was immaterial because testimony alone would suffice.

The court was correct. A trial court may issue a DVRO "if an affidavit or testimony and any additional information provided to the court pursuant to Section 6306, shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse. The court may issue an order under this part based solely on the affidavit or testimony of the person requesting the restraining

13

order." (§ 6300, subd. (a).) The Evidence Code similarly provides that "the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact." (Evid. Code, § 411; see also *Alperson v. Mirisch Co.* (1967) 250 Cal.App.2d 84, 93 ["It is the rule . . . that the testimony of one witness, if believed by the trier of fact and if not inherently improbable, is sufficient to sustain a finding"].) Otherwise, " 'questions as to the weight and sufficiency of the evidence, the construction to be put upon it, the inferences to be drawn therefrom, the credibility of witnesses . . . and the determination of [any] conflicts and inconsistencies in their testimony are matters for the trial court to resolve.' " (*Sav-On Drug Stores*, *supra*, 34 Cal.4th at p. 334.)

Moreover, " '[Evidence Code] [s]ection 412 only applies when it can be shown that a party is in fact in possession of or has access to better and stronger evidence than was presented' " (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 362) and it is not clear that is the case here. The testimony and argument regarding the photographs and journal entries does not suggest they would have been dispositive of the abuse determination. Father did not elaborate as to the content of the journal entries, and the court may well have barred their admission as self-serving hearsay. As for the photographs, Father explained that they did not show his face, so there were issues with proving the pictures showed injuries to *his* leg. Father also did not indicate anything in the photographs that tied the injuries to Mother.

Also, even if the court viewed Father's testimony with "distrust," it was not required to discount it completely. When a factfinder applies the Evidence Code section 412 inference, it discounts the weight of the evidence or credibility of the witness. (See *Largey v. Intrastate Radiotelephone, Inc.* (1982) 136 Cal.App.3d 660, 672 ["Evidence Code section 412 deals not with

14

'best' evidence, but with 'weaker and less satisfactory' evidence"]; *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1537 [citing Evidence Code section 412 and explaining that a jury was free to "reasonably disbelieve" self-serving portions of testimony].) The trial court here was well aware of Father's failure to produce what he claimed were readily available photographs and journal entries. Mother cites no authority that the court was required to expressly state that it was applying Evidence Code section 412 in the context of a non-jury proceeding. Thus, we may presume the court factored Father's decision not to provide this additional evidence into its credibility determination.

On appellate review, we must defer to a trial court's credibility determination when they are supported by substantial evidence. (*Niko*, *supra*, 144 Cal.App.4th at pp. 364-365.) Because in determining whether to grant or deny a petition for a DVRO the court is directed to consider the totality of the circumstances (§ 6301, subd. (c); *F.M. & M.M.*, *supra*, 65 Cal.App.5th at p. 117), we do the same here. The evidence shows that Mother admitted striking Father in October. Although the DVPA does not contain a corroboration requirement (*F.M. & M.M.*, at p. 118), the record here also contains some additional evidence of abuse. The police report reflects that Father told an officer that there had been approximately 10 other incidents within the preceding six weeks. And while the court afforded little to no weight to the other witnesses, Father's father testified that Mother admitted to him that she struck Father in September. Thus, even if the court viewed Father's testimony with some "distrust" pursuant to Evidence Code section 412 based on his failure to produce the photographs and journal, substantial evidence in the record still supported its finding that abuse occurred. Once we conclude substantial evidence supporting the trial court's

15

credibility determination exists, we may not reverse the judgment even if we may have believed other evidence or reached a different conclusion. (*DeSouza, supra*, 54 Cal.App.5th at p. 33.)

F.    *Inclusion of the Children as Protected Parties*

Mother's final contention is that the trial court improperly exercised its discretion by including the children in the DVRO when there was no evidence they were part of any violence between the parties.

Father responds that after notice and a hearing, section 6340, subdivision (a) affords the trial court the same discretion it has under section 6320 to include family members as protected parties. Moreover, the evidence showed that Father was holding the infant during the September 2021 incident, and both children were present during the October 2021 incident.

Based on a showing of good cause, the court may include minor children residing in the household in a protective order. (§ 6320, subd. (a); *M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1144 (*M.S.*) ["By its plain language, section 6320, subdivision (a), requires only a showing of 'good cause' for the inclusion of family members or household members in a DVRO"].) When determining whether to issue a DVRO after notice and a hearing, "the court shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought." (§ 6340, subd. (a)(1).) But a finding of potential jeopardy to the safety of the children is not a necessary predicate for including the children as protected parties. (*J.H. v. G.H.* (2021) 63 Cal.App.5th 633, 642 (*J.H.*).) Instead, "the court must consider the totality of the circumstances." (*Id.* at p. 643; § 6301, subd. (c).)

In this case, the trial court was well within its discretion in finding good cause to include the minor children in the DVRO. Mother acknowledged

16

that her son was in the bedroom when she pushed the bedroom door closed on Father. She further stated that after she closed the door, she heard her daughter scream from the other room. Thus, it is undisputed that both children were not only present, but in close proximity to the dispute. Father further testified that he was holding the younger child when Mother attacked and scratched him in September. He said she punched him with "closed fists and swinging side to side" and "[a]t any time she could have missed and actually hit our daughter." At the time of the October incident, their son was two years old, and their daughter was six months old. Both were too young to protect themselves from being even inadvertently harmed by the violence.

Nonetheless, based on the reasons already addressed above, Mother contends the court "ignored the majority of the evidence" and "failed to consider the totality of the evidence." We have already rejected Mother's other arguments. With regard to including the children as protected parties, we conclude the trial court drew reasonable inferences from the evidence, which supported a finding that the violence jeopardized their safety. (See *J.H.*, *supra*, 63 Cal.App.5th at 643.) We may not reweigh the evidence or substitute our own judgment for that of the trial court. (*M.S.*, *supra*, 76 Cal.App.5th at p. 1145.) Based on the totality of the circumstances appearing in the record, we conclude the trial court did not abuse its discretion in including the children in the DVRO.

17

DISPOSITION

The order is affirmed.  Father is entitled to his costs on appeal.


                                                        HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.